# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

DAVID H. LEMPERT,  ı
c/o Walter Schwartz  ı
110 Crestview Place  ı
Ardsley, NY 10502  ı
(A U.S. citizen residing overseas,  ı
with most recent U.S. residence in  ı
the District of Columbia)  ı
                    Plaintiff,  ı
  ı

v.  ı
             ı
             ı

SUSAN E. RICE,  ı
U.S. AMBASSADOR TO THE  ı
UNITED NATIONS,  ı
Washington, D.C.  ı
                Defendant  ı
  ı

UNITED NATIONS and  ı
UNITED NATIONS  ı
DEVELOPMENT PROGRAMME,  ı
Washington, D.C.  ı
                Defendant.  ı

Case: 1:12-cv-01518
Assigned to: Kollar-Kotelly, Colleen
Assign Date: 9/13/2012
Description: Contract

## PLAINTIFF'S RESPONSE TO STATEMENT OF INTEREST OF THE UNITED STATES OF AMERICA WITH REGARD TO THE SCOPE OF IMMUNITY OF THE DEFENDANT UNITED NATIONS AND UNITED NATIONS DEVELOPMENT PROGRAMME

This Memorandum is in response to the invitation of the Court, as part of the

Court's Order of May 13, 2013, to file a Response to the "Statement of Interest of the

United States of America" with regard to the scope of immunity of the Defendant United

Nations and United Nations Development Programme (hereinafter referred to as

"UN/UNDP") filed with the court on May 3, 2013 by the Office of the Acting Assistant

Attorney General of the U.S. Department of Justice (hereinafter referred to as "DoJ").

This Memorandum supplements Plaintiff's Opposition to Defendant Susan Rice's Motion to Dismiss that was completed by Plaintiff on May 13, 2013 and reached the court for filing on May 16, 2013.  Since both Defendant Susan Rice's Motion to Dismiss and the Statement of Interest were interlinked with each other and both prepared by DoJ, Plaintiff's argument in Opposition to Defendant Susan Rice's Motion to Dismiss includes some responses to the Statement of Interest.

This Memorandum offers additional support for Plaintiff's Motion for Court Service of Defendant UN/UNDP and Sanctions Against Said Defendant for Refusal of Service of April 13, 2013.

This Memorandum also seeks to advise the Court on the protocol that the Court may wish to follow in advising the Defendant United Nations and United Nations Development Programme of its responsibilities and duties in a way that helps promote the interests of the UN/UNDP, the United State of America, and Plaintiff.  Plaintiff believes these interests are all complementary here, though they have come to appear at odds due to certain acts by individuals in the UN/UNDP, inactions by Defendant Susan Rice, and incomplete presentations of the law by DoJ.

**TABLE OF CONTENTS**

PREFACE………………………………………………………………………………1

TABLE OF AUTHORITIES ..........................................................................................4

INTRODUCTION ..........................................................................................................6

ARGUMENT...................................................................................................................7

STANDARD OF REVIEW..............................................................................................7

    I. No Statutes or Case Law Immunize Defendant United Nations and United
Nations Development Programme from Service in U.S. Courts and the Court Must
Ensure Service of Said Defendant to Protect Plaintiff's Constitutional Rights as well
as to Promote US Treaty Obligations with the U.N...............................,...........7

    II. Defendant United Nations and United Nations Development Programme is <u>not</u>
Immune from Suits in U.S. Courts for Breach of Contract and Related Damages
with U.S. Citizens. The General Convention on the Privileges and Immunities of
the United Nations Recognizes the Duty of the United Nations and the Authority of
the U.S. Courts to Waive Immunities to Allow this Suit to Go Forward. As a Matter
of Protocol, the Courts and/or the Executive Branch of the U.S. Government May
Request the Secretary General of the United Nations to Consider that Duty before
the Courts Assert that Authority.......................................................... 13

    III. Dismissal of this Case Against Defendant United Nations and United Nations
Development Programme Would Prejudice the Fundamental Rights of Plaintiff
Since Both Defendants Appear to be Working in Concert...................21

CONCLUSION..................................................................................................................22

## TABLE OF AUTHORITIES

### CASES

*Boimah v. United Nations General Assembly*
664 F.Supp. 69, 71 (E.D.N.Y.1987)……………………………………..…………….18

*Brzak v. United Nations*,
597 F.3d 107 (2d Cir. 2010)......................................................................................18, 19

*Brzak v. United Nations*,
551 F. Supp. 2d 313 (S.D.N.Y. 2008)...........................................................................18

*Donald v. Orfila*,
788 F. 2d 36 (D.C. Cir. 1986)…………………………………………………………19

*De Luca v. United Nations Org.*,
841 F. Supp. 531 (S.D.N.Y.1994) .................................................................................21

*Osseiran v. Int'l Fin. Corp.*
552 F 3d 836, 840 (DC Cir. 2009)……………………………………………..11, 17

*Oss Nokalva v. European Space Agency*
617 F.3d 712 (2010)………………………………………...……………10, 11, 16, 17, 19, 21

*Sadikoglu v. UN Development Programme*,
No. 11-Civ-0294 (PKC), 2011 WL. 4953994 (S.D.N.Y. Oct. 14, 2011)………….………19

*United States v. Carolene Products Company*
304 U.S. 144 (1938)………………………………………………..…………....……15

### U.S. CONSTITUTION

Article III, Section 2………………………………………………………………..……..9

Amendment V (and XIV)……………………………………..………..8, 12, 13, 14, 22

### FEDERAL STATUTES

*International Organizations Immunities Act*
22 U.S.C. § 288.............................................................................................9, 13, 14, 15

*Foreign Sovereign Immunity Act of 1976*
28 U.S.C. §§ 1330, 1602, et seq……………………………………….………..9, 14, 15

**FEDERAL RULES**

Fed. R. Civ. P. 4 d) and Form 5.........................................................................................9

Fed. R. Civ. P. 12…………………………………………………………………………6

**TREATIES AND INTERNATIONAL AGREEMENTS**

*General Convention on the Privileges and Immunities of the United Nations*
21 U.S.T. 1418, 1 U.N.T.S. 16 (Feb. 13, 1946)................................6, 7, 10-14, 16, 19 - 21

*Charter of the United Nations, June 26, 1945*
59 Stat. 1031 (1945)……………………………………………………….……10-12, 19

## INTRODUCTION

Though the Department of Justice has asserted a defense on behalf of Defendant United Nations and United Nations Development Programme for lack of subject matter jurisdiction (Fed. Rules of Civil Procedure 12) in this case, on the basis of a lack of express waiver of said Defendant's immunity, this is not the appropriate standard for dismissal of claims against said Defendant.

Without service on Defendant UN/UNDP and formal response to this Court under oath from or on direct behalf of the Secretary General of the U.N. (who has the duty and authority at the UN to waive such immunity under particular circumstances), the court has no basis at all to determine now whether such waiver has or has not occurred or has been considered in line with the Secretary General's duties and treaty obligations.

In fact, the *General Convention on the Privileges and Immunities of the United Nations* and recent case law recognize the authority of this Court to find that the Defendant UN/UNDP has waived such immunity even without an express waiver by Defendant. Such a waiver, be it express from the Secretary General or implied by the Courts, is in fact in the interests of the United Nations in furthering its purposes; purposes which the U.S. is also bound to support by treaty. Plaintiff's lawsuit in fact promotes such interests rather than acts in opposition to them.

Service of Defendant UN/UNDP is required to protect the authority of this Court, the Constitutional Rights of the Plaintiff and the ability of the Secretary General of the United Nations to act in accordance with his treaty obligations.

This Court has the authority to act on its own to waive Defendant UN/UNDP's immunity in protection of Plaintiff's Constitutional due process rights and in accordance with U.S. laws, U.S. interests and treaty obligations.  It simply behooves the Court to follow protocol in working with the Defendant UN/UNDP to formally recognize its obligations.

Dismissal of this case is also inappropriate here because it would also jeopardize Plaintiff's fundamental rights in pursuing his claims against Defendant Susan Rice since both Defendants appear to be acting in concert.

## ARGUMENT

### STANDARD OF REVIEW

**I.    No Statutes or Case Law Immunize Defendant United Nations and United Nations Development Programme from Service in U.S. Courts and the Court Must Ensure Service of Said Defendant to Protect Plaintiff's Constitutional Rights as well as to Promote US Treaty Obligations with the UN**

The Federal Rules of Civil Procedure make it clear that even where a Defendant may have an immunity or even just a belief in immunity, it still must answer a complaint before the courts, whether Defendant is a government or an international organization, in order to protect the Constitutional due process rights of Plaintiff.  Not only is this consistent with the ability of an international organization like UN/UNDP to exercise its rights as a legal person eligible to contract and to enforce its contract rights in the courts (the courts link this "corresponding benefit" with an implied waiver of immunity in commercial cases) but there are important policy reasons consistent with the *General Convention on the Privileges and Immunities of the United Nations* and the *United Nations Charter* that call for sworn statements to the Court in answer to process.

Plaintiff has the right to bring this case in invoking the judicial powers of the U.S. Constitution under Article III Section 2 in protection of his fundamental rights to "due process" under the Fifth and Fourteenth Amendments that require a Defendant must answer before a neutral body and under oath.   The Constitution recognizes the right of Plaintiff to initiate this case under the "Constitution, the Laws of the United States and Treaties made", between a citizen and "foreign States" (*U.S. Constitution*, Article III, Section 2).

In defending his property interests and his rights in commercial activities with Defendant UN/UNDP, Plaintiff is entitled to "due process of law" in which Defendant must answer directly before a neutral body (*U.S. Constitution*, Fifth Amendment and Fourteenth Amendment).  Fundamental to due process is the ability of Plaintiff to confront and cross examine those who have deprived him of property and to have them present their reasons in sworn testimony, before a neutral body; factors among the key requirements of "due process".[1]   Plaintiff is invoking his right to hear Defendant UN/UNDP assert its claims under oath in recognition of those due process requirements. A Memorandum from DoJ asserting a defense on behalf of said Defendant is no substitute for this.  Defendant UN/UNDP has yet to offer any sworn statement to this Court or to even recognize the Court, at continuing costs to Plaintiff.  It has refused all contact with the Plaintiff despite multiple efforts to serve said Defendant and to open lines of communication.  While the Secretary General of the United Nations has specific duties to the interests of justice and to due process (described below), the Courts have no

---

[1] Often cited with the components of "due process" is the list submitted by Judge Henry Friendly, including the requirements of a neutral body, notice of the reasons for a taking, the right to know opposing evidence and to confront witnesses. See Strauss, Peter. "DUE PROCESS". Legal Information Institute. http://www.law.cornell.edu/wex/due_process. Retrieved 8 March 2013

sworn statement from or on direct behalf of the Secretary General that he is even aware of this case or the issues in it.

Plaintiff has already reminded this Court that Defendant UN/UNDP's belief in immunity is not considered "good cause" for evading service and the sanctions that ensure under Rule 4 of the Federal Rules of Civil Procedure (and Form 5, mandated by FRCP 4) d)). Defendant must still consider the claims and assert its defenses.

Plaintiff further reminds the Court that Defendant UN/UNDP is to be treated in the same way that the Court would treat the UN's Member States, subject to the "same immunity from suit and every form of judicial process as enjoyed by foreign governments" (*International Organizations Immunities Act*, 22 U.S.C. § 288 a(b)).

The Courts have held that international organizations consisting of Member States are subject to the same immunities but also to the same restrictions on those immunities and the same sanctions that would apply to Member States as are clarified by the *Foreign Sovereign Immunities Act of 1976* ("FSIA") (28 U.S.C. §§ 1330, 1602, et seq.) (*Oss Nokalva v. European Space Agency*, 617 F.3d 712 (2010)). The laws do create exceptions to immunities for the courts to weigh and all parties are subject to argue before the courts. In *Oss Nokalva*, the court noted that there is "no compelling reason why a group of states acting through an international organization is entitled to broader immunity than its member states enjoy when acting alone." (*Oss Nokalva*).

The *International Organizations Immunities Act* ("IOIA") recognizes international organizations as legal persons that "possess the capacity— (i) to contract; (ii) to acquire and dispose of real and personal property; [and] (iii) to institute legal proceedings." (*International Organizations Immunities Act*, 22 U.S.C. § 288 a(a)). This

is the same benefit extended to the United Nations in its Charter, granting the UN "such legal capacity as may be necessary for the exercise of its functions and the fulfillment of its purposes" (*Charter of the United Nations, June 26, 1945* 59 Stat. 1031 (1945), Article 104). The Courts recognize that these benefits of legal standing also require responsibilities in commercial cases before the courts. International organizations have the right to sue and the corresponding responsibility to respond to lawsuits in their capacity as legal persons, particularly in commercial cases in which such "corresponding benefit" creates an implied waiver of their immunity *Oss Nokalva v. European Space Agency*, 617 F.3d 712 (2010). In the case of the Defendant UN/UNDP, there are even more specific duties to the Plaintiff in the interests of justice (described below).

In asserting the obligations that come with the benefit of the status of legal persons before U.S. courts, the DC Circuit Court has also recognized obligations of international organizations similar to the UN in cases similar to this one. In *Oss Nokalva*, the Court's decision relied on a recent DC Circuit Court opinion ruling against the immunity of the International Finance Corporation; an organization of Member States like the United Nations. The Court invoked the commercial activities exemption from sovereign immunity and upheld Plaintiff's right to pursue an action for breach of contract and the requirement that the Defendant answer plaintiff's claim (*Osseiran v. Int'l Fin. Corp.*, 552 F.3d 836, 840 DC Cir. 2009).

The *General Convention* makes it clear why Defendant UN/UNDP also has special and additional obligations to respond directly to the courts, in order to assure fulfillment of its specific mission and obligation to justice. The *General Convention* imposes specific legal duties on the Secretary General of the UN which include duties to

"justice" through the courts of Member States.  To carry out those duties, the Secretary

General obviously must be made aware of them in specific cases so that he can respond

in fulfillment of that treaty.  Yet, in presentations to this Court, the DoJ has made it clear

that it will exert no effort through the Executive Branch to assure that the Secretary

General is made aware of those duties in cases like this one, where U.S. citizens and U.S.

interests, including Constitutional requirements are placed in jeopardy by actions of the

UN/UNDP.  An appropriate mechanism to do so is service of Court process on the UN.

According to the *General Convention*, "The Secretary-General shall have the

right and the duty to waive the immunity of any official in any case where, in his opinion,

the immunity would impede the course of justice and can be waived without prejudice to

the interests of the United Nations." *General Convention*, 21 U.S.T. 1418, 1 U.N.T.S. 16

(Feb. 13, 1946), Article V, Section 20).  Moreover, the next section extends that duty to

require that the UN co-operate at all times with the appropriate authorities of Members to

facilitate the proper administration of justice, secure the observance of police regulations

and prevent the occurrence of any abuse in connection with the privileges, immunities

and facilities mentioned in this Article.  (*General Convention*, Article V, Section 21).

In addressing this duty, the Secretary General must assure that he is acting in a

way that promotes the mission of the UN is to act "in conformity with the principles of

justice and international law, adjustment or settlement of international disputes or

situations which might lead to a breach of the peace" (*UN Charter*, Article 1) and "To

develop friendly relations among nations" (*UN Charter*, Article 2).

The United Nations is also required by the *General Convention* to protect due

process rights of parties, including the Plaintiff, either through its own mechanisms or, if

they do not exist, through due process mechanisms of its Member States, as in this case.
The General Convention makes it clear that, "The United Nations shall make provisions
for appropriate modes of settlement of: (a) disputes arising out of contracts or other
disputes of a private law character to which the United Nations is a party." (*General
Convention*, Article VIII, Section 29).

In this case, Plaintiff has made serious allegations about the actions of several
officials working for the United Nations and United Nations Development Programme,
including lawyers within the UN's legal department. Plaintiff has asked, several times,
for the UN system to investigate activities that appear to constitute significant misconduct
in violation of UN regulations and the UN charter. Rather than investigate, Plaintiff
alleges that the individuals who have received this information, including lawyers within
the UN's legal department, have acted to further the misconduct.

Plaintiff has also presented evidence that no settlement procedures exist within
the UN system to offer him any form of due process at all in his dispute or mechanism to
independently investigate the misconduct that he has alleged and that are at the basis of
this dispute. He alleges that the UN/UNDP and Defendant Susan Rice have not fulfilled
the obligations of the *General Convention* under Article VIII, Section 29 and have thus
violated his Constitutional due process rights under the 5th and 14th Amendments.

Plaintiff has presented evidence to this Court that potential conflicts of interest
and misconduct by officials within the UN legal office that may be reinforced by the
current efforts of the UN legal office to evade Court processes. Plaintiff notes that DoJ's
Statement of Interest is heavily based on an unsworn letter that has been introduced into
evidence before this court, not from the Secretary General or with any mention of the

knowledge of or action on behalf of the Secretary General, but from Patricia O'Brien, the

UN's Undersecretary General for Legal Affairs.

Plaintiff and this Court cannot be assured that any of the allegations made before

this Court will come to the attention of the Secretary General of the UN unless Defendant

UN/UNDP is properly served.  Nor can Plaintiff cross examine either Patricia O'Brien or

DoJ to determine what communications occurred between UN lawyers and Defendant

Susan Rice on the preparation of, decision to use, or response to this letter unless

Defendant UN/UNDP is properly served.

The mechanisms for UN Treaty obligations to work at all levels, from the UN's

status as a legal person to the Secretary General's oversight, and for protection of

Plaintiff's fundamental rights, require service on Defendant UN/UNDP.

II.    **Defendant United Nations and United Nations Development Programme is <u>not</u> Immune from Suits in U.S. Courts for Breach of Contract and Related Damages with U.S. Citizens.  The General Convention on the Privileges and Immunities of the United Nations Recognizes the Duty of the United Nations and the Authority of the U.S. Courts to Waive Immunities to Allow this Suit to Go Forward.  As a Matter of Protocol, the Courts and/or the Executive Branch of the U.S. Government May Request the Secretary General of the United Nations to Consider that Duty before the Courts Assert that Authority.**

The Court already has the authority to act on its own to waive Defendant United

Nations and United Nations Development Programme's immunity in this case in

protection of Plaintiff's Constitutional Fifth and Fourteenth Amendment due process

rights and to recognize that said Defendant has constructively and implicitly waived its

immunity under the *U.N. Charter* and the *General Convention on the Privileges and*

*Immunities of the United Nations* ("General Convention") as well as under related acts

such as the *International Organizations Immunities Act* ("IOIA") and *Foreign Sovereign*

*Immunities Act* ("FSIA").  Such authority also allows the Court to apply sanctions to

Defendant UN/UNDP for its evasion of process.  Though the Court does not need to wait

for the Secretary General of the U.N. to exercise his duty to work with this Court and to

offer an express waiver, the interests of protocol and justice would suggest that the Court

seek to create the opportunity for the Secretary General to do so.

There is a single thread that the Court can use to apply the different laws, treaties,

and case law here that follows a clear constitutional principle.  Plaintiff's argument is

based on his fundamental right to his property interests that are protected under the 5th

and 14th Amendments to the U.S. Constitution.  In weighing claims of immunity, the

Court must, therefore, apply a test of "strict scrutiny" that balances Plaintiff's due process

rights against "compelling state interests" and finds the least restrictive means affecting

those rights.  *United States v. Carolene Products Company*, 304 U.S. 144 (1938).

In this case the *General Convention* and the *United Nations Charter* can be used in

the balancing, to determine if the Defendant UN/UNDP has complied with its obligations

to offer due process in resolving disputes (under Article VIII, Section 29, cited above,

*General Convention*, 21 U.S.T. 1418, 1 U.N.T.S. 16 (Feb. 13, 1946).) and whether those

activities which have given rise to Plaintiff's claim are within furtherance of the

organization's purpose for which it has been given the "legal capacity" for the

"fulfillment of its purposes"  (*Charter of the United Nations, June 26, 1945* 59 Stat. 1031

(1945) (Articles 104, 105)).

In applying strict scrutiny to international organizations, in general, the courts have

relied on the *IOIA* (22 U.S.C. § 288) and the *FSIA* (28 U.S.C. §§ 1330, 1602, et seq) that

also establish standards for measuring the U.S. government's compelling interest and for

applying a balancing test. Essentially, the test of "compelling state interest" has been in two areas: the ability of the organization to function in furtherance of its mission and also the implications of the organization's right to contract as legal persons in U.S. courts. In applying these acts to international organizations, courts have recognized that the granting of status as "legal person" immediately creates a "commercial activities" exception to immunity and an associated implied or constructive waiver of immunity of international organizations. By agreeing to the benefits of legal standing as legal persons in U.S. courts with the right to contract, the "corresponding benefit" that international organizations receive creates an implied waiver of immunities in suits that arise out of those contracts. This "commercial activities" exception is almost automatic.

In a case very similar to this one, where the plaintiff argued contract rights and also sought tort damages against an international organization, the court held that "the reasoning underlying the FSIA's exception for suits arising out of a government's commercial transactions ... is equally applicable to international organizations and is incorporated into the IOIA." (*Oss Nokalva v. European Space Agency*, 617 F.3d 712 (2010)). Indeed, *Oss Nokalva*, the European Space Agency ("ESA"), an international organization of Member States, had a charter similar to that of the United Nations that also imposed similar duties on the organization for waiving its immunities. Indeed, the language is similar to that of the duty of the U.N. Secretary General.[2] That court created an implied waiver of immunity based on the "corresponding benefits" that the ESA

---

[2] "The Secretary-General shall have the right and the duty to waive the immunity of any official in any case where, in his opinion, the immunity would impede the course of justice and can be waived without prejudice to the interests of the United Nations." (*U.N. General Convention*, Article 20). The language of the ESA Convention may even be based on that of the U.N.: "the Council has the duty to waive this immunity in all cases where reliance upon it would impede the course of justice and it can be waived without prejudicing the interests of the Agency[.]" Convention, Annex I, Art. IV ¶ 1(a).

received from its status as a legal person.  "The Court therefore finds that ESA will benefit by waiving its immunity for both the contract and tort claims as it will enhance ESA's ability to participate in commercial transactions by promoting fair play in the market."  (*Oss Nokalva*, 617 F.3d 712 (2010))  The D.C. Circuit has also upheld this principle against the International Finance Corporation, an international organization of Member States including the U.S., in affirming the right of a plaintiff to sue on a breach of contract claim, noting that "immunity from suits based on 'commercial transactions with the outside world' can hinder an organization's ability to operate in the marketplace."  (*Osseiran v. Int'l Fin. Corp.*, 552 F. 3d 836, 840 (D.C. Cir 2009).)

All these components of the standard (whether Plaintiff had access to "due process" and whether any "compelling state interest" would narrow it or do the opposite and create an implied waiver) are very easy to apply in this case in the Plaintiff's favor.  Is clear that Defendant UN/UNDP failed to provide Plaintiff with a due process remedy, that officials within UN/UNDP were not acting in furtherance of the UN mission in causing harms to Plaintiff, and that under the "commercial activities" exemption, the Courts can almost automatically assume an implied waiver of Defendant UN/UNDP's immunity.

In protecting Plaintiff's due process rights, the Court must look first to see whether or not Defendant UN/UNDP offered and adhered to an "appropriate mode of settlement" as required by Article VIII, Section 29 of the *General Convention*.  Here, the answer is "no."  No process at all existed to resolve Plaintiff's dispute internally within the U.N. or externally because Defendant UN/UNDP did not recognize Plaintiff's contract.  No process at Defendant UN/UNDP investigated Plaintiff's claims of fraud, harassment, misconduct and breach of contract.  Plaintiff brought his claims before the

16

heads of the United Nations Volunteers, the United Nations Development Programme,

and the United Nations Development Programme in Laos as well as elsewhere within

UN/UNDP, including the Ombudsman's office and the UNDP Legal Office. None

initiated any internal procedures because they would not recognize Plaintiff's contract or

its responsibilities to Plaintiff. In not recognizing Plaintiff's contract, they asserted the

unsubstantiated claim that Plaintiff alleges to be evidence of misconduct; falsely blaming

a Member State. Indeed, this is exactly the circumstances that the General Charter and

the Courts envision for offering a remedy in U.S. courts. Here, the Court is not in

competition with existing procedures and Plaintiff's use of the Courts do not attempt to

override any existing due process procedures in ways that create risks or burdens for the

activities of the Defendant. Procedures simply do not exist to hear Plaintiff's claim.

Defendant UN/UNDP had an opportunity to create and apply such procedures but it it

waived that right, implying that Plaintiff seek an outside remedy through the U.S. courts.

    The cases that DoJ relies on to declare an "absolute" immunity for Defendant

UN/UNDP actually support Plaintiff's argument. DoJ has failed to recognize that in

those cases the Courts granted immunity to the UN only because there were already due

process procedures to which the claimants had recourse and which the UN did not waive.

Three of the five cases on which DoJ relies (including one on which he claims that

Defendant UN/UNDP is also immunized from process) were employee cases internal to

the United Nations in which the Courts found the Defendant UN/UNDP to be immune

because internal due process procedures existed for employees already with recognized

contracts. *Boimah v. United Nations General Assembly*, 664 F. Supp. 69 (E.D.N.Y.1987)

; *Brzak v. United Nations*, 597 F.3d 107 (2d Cir. 2010), *Brzak v. United Nations*, 551 F.

Supp. 2d 313 (S.D.N.Y. 2008).  A fourth of the five cases does deal with a contract claim, but it appears that in that case there also was an agreed remedy between the parties. *Sadikoglu v. UN Development Programme*, No. 11-Civ-0294 (PKC), 2011 WL. 4953994 (S.D.N.Y. Oct. 14, 2011). None of these cases are relevant to the facts here.

In applying the second part of the "strict scrutiny" test, the Court can examine whether Plaintiff's lawsuit would somehow interfere with the work of Defendant UN/UNDP in fulfilling its functions and find, instead, that this lawsuit actually promotes those functions and also implicitly waives immunity.  Generally, the courts look to whether UN officials are performing their "official functions" "independently, impartially and efficiently" and how a suit might impact on those activities (*Brzak v. United Nations*, 597 F.3d 107 (2d Cir. 2010)).  The courts look directly at the functions, themselves to consider the "compelling state interest" without questioning whether the intent might be in "bad faith." (*Donald v. Orfila*, 788 F. 2d 36 (D.C. Cir. 1986).

In this case, Plaintiff's lawsuit affirms and promotes the mission of the United Nations, first, by helping to identify and prevent activities that are undermining the organizational mission, and second, and almost automatically applicable, by enhancing Defendant UN/UNDP's ability to engage in commercial transactions to hire the professionals it needs to perform effectively, through fair play in the market (paraphrasing the reasoning of the Courts for an implied waiver in *Oss Nokalva*).

The misconduct that Plaintiff has alleged here as the basis of harms, points to serious failures within the U.N. system that could undermine the legitimacy and existence of the organization  The acts by UN officials to blame a sovereign government for misconduct by UN officials and not by that government, to allegedly defraud a Member

State in the seeking of funds and to play countries off of each other to generate more

funds for officials to administer, is in direct violation of the goals of the UN Charter:  to

act "in conformity with the principles of justice and international law, adjustment or

settlement of international disputes or situations which might lead to a breach of the

peace" (*UN Charter*, Article 1) and "To develop friendly relations among nations" (UN

Charter, Article 2).   It is the role of the U.S. government to assure fulfillment of that

Charter consistent with U.S. law.

      Even if Defendant UN/UNDP were to claim that it routinely sells positions to

Member States that it has already contracted in open competitions, that it sells programs

to lobby governments for particular interests of Member States, that it plays Member

States against each other to fund its activities, and/or that it falsely blames Member States

to gain more administrative flexibility, such activities would still be in violation of its

mission and would not be immune from challenge by the parties whose interests were

adversely effected.  This a case where it is clearly the duty of the Secretary General of the

UN to "cooperate at all times with the appropriate authorities of Members to facilitate the

proper administration of justice … and prevent the occurrence of any abuse …" (*General

Convention*, Article 21), and to waive immunity where such immunity "would impede the

course of justice and can be waived without prejudice to the interests of the United

Nations." (*General Convention*, Article 20).  Here, the appropriate authority for that

administration of justice is this Court.  Note that this is not simply a "right."  This is a

"duty".  It is such duty that constitutes the Defendant's implied waiver of immunity.

      As noted above, the courts already recognize such implied waivers in cases like

this one where an international organization already has the rights of a legal person and

where the case stems from commercial activities with direct ties to the United States and where lawsuits promote further contract abilities. *Oss Nokalva Inc. v. European Space Agency*, 617 F. 3d 712 (2010). Indeed, what American lawyer would agree to go half way around the world to work for the United Nations if he/she believed he/she could be defrauded of work for months, left stranded on arrival with a breached contract and then harassed, including being pressured to agree to covering up what happened by falsely blaming the problem on the government of a sovereign state where he/she was hired to promote "rule of law"? What American lawyer would contract for work with the UN if that job could be "sold" to another government at any time without any court remedy?

This duty to the courts in the *General Convention* also implies that the Defendant UN/UNDP show due respect for the Courts of Member States that have extended it the privileges of conducting commercial activity. Part of that respect requires recognizing the laws and not seeking to use immunity as a way to evade the law. Neither the courts nor the statutes recognize immunity as a license for lawbreaking. It is a privilege for the promotion of specific legitimate functions within an international organization's chartered purpose. In this case, Plaintiff has demonstrated that he provided the Defendant UN/UNDP with specifics of Federal Rules of Civil Procedure Rule 4 and of the consequences of evading those obligations. That is why Defendant UN/UNDP is liable for the costs that it has created for the Court and to Plaintiff.

The final UN case that DoJ cites in arguing for "absolute immunity" also, in fact, supports Plaintiff's claim. The Court in *DeLuca* maintained immunity of UN employees but noted that the decision would be different if the facts were like those of this case. That case involved "neither a commercial nor a professional activity exercised by either

20

of these defendants outside their official functions" in ways that could indicate an implied

waiver of immunity based on the commercial benefit exception or that could demonstrate

that the suit would offer some other benefit to promote the UN's functions and mission.

*De Luca v. United Nations Org.*, 841 F. Supp. 531 (S.D.N.Y.1994).

While Defendant believes that the above authorities would allow the Court to act on

its own to waive the sovereign immunity of the Defendant UN/UNDP in this case, there are

important diplomatic and policy reasons why the *General Convention* offers the Secretary

General the opportunity to expressly waive such immunity or to argue that it does not exist.

The United Nations exists to promote co-operation, justice, and relations among

Member States.  The appropriate authority in the United States to work with the Secretary

General to meet his obligations is U.S. Ambassador to the United Nations Susan Rice.  Susan

Rice, the other Defendant in this case, has the ability to communicate directly with the

Secretary General on behalf of the United States and to work with the Secretary General to

waive UN immunity and to promote the interests of justice and the mission of the UN

through this case.  That should be the first step in interaction with the Secretary General.

Once the Court is convinced that efforts to work with the Secretary General through the

Executive Branch have failed, then it is appropriate for the Court to use its authority to

encourage the Secretary General's cooperation.

### III.   Dismissal of this Case Against Defendant United Nations and United Nations Development Programme Would Prejudice the Fundamental Rights of Plaintiff Since Both Defendants Appear to be Working in Concert

Plaintiff reminds the Court of Plaintiff's argument in Plaintiff's Opposition to

Defendant Susan Rice's Motion to Dismiss that Plaintiff's case is based on a theory of

joint and several liability of the Defendants, whose interests are currently being presented

by the same attorney (DoJ) and who appear to be acting in concert.  At stake in this case are Plaintiff's Constitutional due process rights under the 5th and 14th Amendments.

Dismissal of this case against one Defendant would allow the remaining Defendant to claim that Plaintiff must seek recourse against the other, and could deny Plaintiff his right to due process, including the ability to conduct effective discovery.

Plaintiff reminds the Court that Defendant Susan Rice has already claimed in her Motion to Dismiss (page 8, cited by Plaintiff in Plaintiff's Opposition, page 30) that Plaintiff needed to pursue his remedy against Defendant UN/UNDP.  Similarly,  two different representatives of the State Department have also claimed in responses to Congress and directly to Plaintiff (presented in Plaintiff's Complaint) that Plaintiff should pursue a remedy with UN/UNDP.

Plaintiff can only pursue that remedy once Defendant UN/UNDP is served and said Defendant appears before this Court without the protection of sovereign immunity.

## CONCLUSION

The Department of Justice in representing the United States of America is tasked with upholding the laws of the land and protecting the spectrum of interests served by those laws.  DoJ did not fully respond to the Court's direction on this case in advising the Court.  Here, the United States of America has several interests that are complementary to each other.  They include:

- Protecting authority of and respect for U.S. courts among international actors with the status of legal persons in the U.S. such as the Defendant UN/UNDP;

22

- Assuring that the United Nations, of which the U.S. is a Member, acts consistently with its mission as defined in its Charter;

- Support for the Secretary General of the United Nations in carrying out his oversight duties and legal obligations, including assurance that UN officials do not act outside of the mission of the U.N. Charter to falsely place blame on Member States, mislead or defraud Member States in solicitations of funds, or to play off Member States against each other simply to bring in funds to be administered by those officials;

- Assuring that the Executive Branch of the U.S. government, including the other Defendant in this case, Ambassador Susan Rice, work with the Secretary General of the U.N. and other Member States hold the U.N. accountable to its mission through U.S. courts where the courts are in a position to do so, on matters raised by U.S. citizens and affecting U.S. interests;

- Protecting the contract rights of U.S. citizens with the U.N., including those of American lawyers, contracting to work overseas for the U.N. in furtherance of the U.N. mission and U.S. national interests; and

- Protecting constitutional due process rights of U.S. citizens in their activities with international organizations like the U.N.

In its Statement of Interest to this Court, the only interest that DoJ appears to have sought to protect is of U.N. officials who may be guilty of misconduct and seek to shield their actions from the accountability that the U.N. Charter and U.N. treaties demand.

Where DoJ fails to recognize and protect the full spectrum of U.S. interests under the U.S. constitution and U.S. laws, it is the role of the Courts and citizens to protect

these rights, to protect institutions like the U.N. in fulfillment of their missions, and to protect the laws.

That is why the Court must exercise its authority here to assure that Defendant UN/UNDP is served with process and faces sanctions when it evades process, and to guide the Executive Branch of the U.S. government and, indirectly, the Secretary General of the United Nations, to recognize the UN/UNDP's constructive waiver of its immunity in this case and to work with the Court co-operatively rather than to wait for the Court to exercise this authority on its own.

Plaintiff David Lempert, acting as his own attorney Pro Se, avers, on personal knowledge as to himself, and on information and belief as to all others, all of the above statements.

June 2, 2013                                  Respectfully submitted,

                                              (electronic sign.)
                                              David H. Lempert, Pro Se
                                              California Bar Number  124761


## CERTIFICATE OF SERVICE

Plaintiff David Lempert, acting as Attorney Pro Se, certifies that a copy of this Memorandum in Response to the Statement of Interest of the United States of America has been mailed to a representative of the United States of America, Mr. Nicholas Cartier, U.S. Department of Justice, P.O. Box 883, Washington, DC 20001 by an agent of Plaintiff and sent by email directly by the Plaintiff at the same time that this document has been mailed to the Court.

24

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

DAVID H. LEMPERT,                                       |
c/o Walter Schwartz                                     |
110 Crestview Place                                     |
Ardsley, NY  10502                                      |
                       Plaintiff,   |
                                                    |
v.                                                      |          Case:  <u>1:12-cv-01518</u>
                                   |          Assigned to:  Kollar-Kotelly, Colleen
                                                    |          Assign Date: 9/13/2012
SUSAN E. RICE,                                          |          Description: Contract
U.S. AMBASSADOR TO THE                                  |
UNITED NATIONS,                                         |
Washington, D.C.                                        |
                       Defendant   |
                                                    |
UNITED NATIONS and                                      |
UNITED NATIONS                                          |
DEVELOPMENT PROGRAMME,                                  |
Washington, D.C.                                        |
                       Defendant.  |

## [PROPOSED] ORDER

Upon consideration of Plaintiff's Motion for Court Service of Defendant

UN/UNDP and Sanctions Against Said Defendant for Refusal of Service and Plaintiff's

Response to Statement of Interest of the United States of America with Regard to the

Immunity of the Defendant United Nations and United Nations Development

Programme, the Motion is Granted and the U.S. Marshal is instructed to serve Defendant

UN/UNDP with costs to and sanctions against said Defendant.

**SO ORDERED**.

Date: _____, 2013       _____

                                            HON. COLLEEN KOLLAR-KOTELLY
                                            United States District Judge