# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

DAVID H. LEMPERT,

      *Plaintiff,*

    v.

SUSAN RICE, U.S. Ambassador to the United
Nations, UNITED NATIONS, UNITED
NATIONS DEVELOPMENT PROGRAMME,

      *Defendants.*

**Civil Action No.** 12-01518 **(CKK)**

## MEMORANDUM OPINION
(July 19, 2013)

David H. Lempert ("Plaintiff") brings this action against Defendants the United Nations ("UN"), the UN Development Programme ("UNDP") (collectively "UN Defendants"), and Susan Rice, former United States Ambassador to the United Nations ("Rice").[1]  Plaintiff, who is proceeding *pro se*,[2] asserts claims for breach of contract, fraud, and harassment alleging that Defendants failed to fulfill their obligations to reimburse and hire Plaintiff, an attorney and anthropologist, as part of a UN project abroad.  Pending before the Court are three motions: Plaintiff's [16] Motion for Court Service of Defendant UN and UNDP and Sanctions against said Defendant[s] for Refusal of Service; Rice's [18] Motion to Dismiss; and Plaintiff's [25] Motion to Respond to New Arguments for Dismissal Raised by the Department of Justice, which, in

---

[1] To the extent Plaintiff is suing Rice in her official capacity, acting Ambassador Rosemary DiCarlo shall be automatically substituted as Defendant of record.  *See* Fed. R. Civ. P. 25(d).  However, as discussed in greater detail *infra*, it appears Plaintiff intends for the Court to construe his claims against Rice, at least in part, as claims against her in her individual capacity.  Accordingly, for ease of reference, the Court shall continue in this Memorandum Opinion to refer to all of Plaintiff's claims against the United States Ambassador to the UN as against Defendant Rice.

[2] Although Plaintiff is proceeding in this action *pro se*, he is an attorney, *see* Compl. ¶ 4, and is therefore presumed to have knowledge of the legal system.  *Curran v. Holder*, 626 F. Supp. 2d 30, 33 (D.D.C. 2009).  As a result, he is not entitled to the same level of solicitude often afforded non-attorney litigants proceeding without legal representation. *Baird v. Snowbarger*, 744 F. Supp. 2d 279, 286 (D.D.C. 2010).

essence, is a motion for leave to file a sur-reply.  Also before the Court is a [17] Statement of

Interest of the United States of America, which the Government submitted in response to the

Court's request for the United States' views on whether the UN is immune from suit in this

action, *see* Order Soliciting the Views of the United States, ECF No. [11].[3]

With respect to Plaintiff's motion for leave to file a sur-reply, the Court agrees with Rice

that the motion is, in part, an improper attempt to reargue matters already addressed and to argue

new arguments which Plaintiff neglected to raise in his opposition brief.  However, because the

Court finds the sur-reply useful to its understanding of Plaintiff's theory of this case and

therefore to the Court's consideration of Rice's motion to dismiss, the Court shall GRANT

Plaintiff's [25] motion and shall consider the memorandum attached thereto.

Upon careful consideration of the parties' submissions, the relevant authorities, and the

record as a whole, the Court shall GRANT Rice's motion to dismiss.  The Court shall also

DENY Plaintiff's motion for court service upon, and sanctions against, the UN and UNDP and

shall dismiss Plaintiff's Complaint against them.  Accordingly, and for the reasons discussed

below, this case shall be dismissed in its entirety.[4]

---

[3] The Government's authority to file a Statement of Interest derives from 28 U.S.C. § 517, which provides that the "Solicitor General, or any officer of the Department of Justice, may be sent by the Attorney General to any State or district in the United States to attend to the interests of the United States in a suit pending in a court of the United States[.]"

[4] While the Court renders its decision today on the record as a whole, its consideration has focused on the following documents, listed in chronological order of their filing:  Pl.'s Compl. ("Compl."), ECF No. [1]; Plaintiff's Mot. for Court Service of Defendant United Nations and United Nations Development Programme and Sanctions Against Said Defendant for Refusal of Service ("Pl.'s Mot."), ECF No. [16]; Statement of Interest of the United States of America ("Gov't Stmt. of Interest"), ECF No. [17]; Def. Susan E. Rice's Mem. in Supp. of Mot. to Dismiss ("Rice Mem."), ECF No. [18]; Pl.'s Opp'n to Def. Susan Rice's Mot. for Dismissal ("Pl.'s Opp'n"), ECF No. [20]; Pl.'s Response to Stmt. of Interest of the United States of America with Regard to the Scope of Immunity of the Def. United Nations and United Nations Development Programme ("Pl.'s Response to Gov't Stmt. of Interest"), ECF No. [22]; Reply in Supp. of Def. Rice's Mot. to Dismiss ("Rice Reply"), ECF No. [23]; Reply in Supp. of Stmt. of Interest of the United States of America ("Gov't Reply Stmt. of Interest"), ECF No. [24]; Pl.'s Mot. to Respond to New Arguments for Dismissal Raised by The Dep't of Justice, Challenging Use of a *Bivens* Claim Against Defendant Susan Rice who is now Westfall Certified and to Query the Court on Issues Regarding Amendments to the Complaint and/or Service (with proposed sur-reply attached) ("Pl.'s Sur-reply"), ECF No. [25]; Def.'s Opp'n to Pl.'s Mot. for Leave to File a Sur-Reply ("Rice Opp'n to Pl.'s Mot. for Leave to File Sur-reply"), ECF No. [26].  In

# I. BACKGROUND

The following facts are taken from the Complaint and must be accepted as true for purposes of a motion to dismiss. *See Atherton v. D.C. Office of the Mayor*, 567 F.3d 672, 681 (D.C. Cir. 2009), *cert. denied*, 559 U.S. 1039, 130 S. Ct. 2064, 176 L. Ed. 2d 418 (2010). Plaintiff, an attorney and anthropologist, has worked as an international consultant on "rights and rights protections" for over twenty years, including on projects for the UN. Compl. ¶ 4. On or about February 27, 2009, the UN Volunteers ("UNV") – an administrative unit of the UNDP – offered Plaintiff a one-year renewable position on a project in Vientiane, Laos, which Plaintiff accepted. *See id*. ¶¶ 5, 7-9. UNV informed Plaintiff that he could anticipate beginning the position in early May 2009. *Id*. ¶ 9.

Subsequently, in or around March 2009, the UNDP in Laos accepted two other lawyers to work on the project, including on several of the tasks for which Plaintiff allegedly had been hired. *Id*. ¶ 11. Shortly thereafter, in early April 2009, Plaintiff received and executed the contract for the position, which indicated that the offer was "subject to Lao government clearance and Medical clearance." *Id*. ¶ 12. After a longer than anticipated delay, on or about August 4, 2009, UNV confirmed to Plaintiff that it had obtained the requisite clearance from the Laos Ministry of Justice and set a start date of August 24, 2009. *Id*. ¶ 18-19. However, in September 2009, after Plaintiff had made all necessary preparations and arrived in Laos, the UNDP informed him that the Laos government had refused to issue him a long-term visa for unknown reasons and that the UNDP was therefore rescinding his position. *Id*. ¶¶ 28, 34. Plaintiff alleges that he later learned that UNDP had never submitted a proper visa request to the Laos government because the other two lawyers were already working on the project. *Id*. ¶ 30.

---

an exercise of its discretion, the Court finds that holding oral argument on the instant motions would not be of assistance in rendering a decision.

Plaintiff further contends that UN officials have attempted to "induce him" to "drop any call for investigations of misconduct by the UN." *Id*. ¶¶ 47, 86. Based on the foregoing allegations, Plaintiff asserts that the UN and UNDP breached his employment contract, *id*. ¶¶ 75-81, 83, and that they committed the torts of fraud and "harassment," *id*. ¶¶ 84-90, 92-93, 97-98.

With respect to Rice, Plaintiff alleges that on several occasions, he wrote to her office about the UN's alleged misconduct and requested assistance from her office to review the matter and either assist directly or exert her authority to waive the UN's sovereign immunity so that Plaintiff could seek a remedy in federal court, but he received no response. *Id*. ¶ 42, 43, 48. Plaintiff contends that due to Rice's failure to "uphold the contracting rights of a U.S. citizen contracting with the [UN], an organization to which the U.S. is a Member and a contracting party," Rice is "jointly and severally liable" for the UN's alleged breach "as a party to the contract." *Id*. ¶ 82. Plaintiff also alleges that he wrote to Rice's office "that their transfer of his letter directly to the UN without any comment would likely have made his situation worse" and that by responding to Plaintiff's requests for assistance in ways that Rice's office "knew would cause harm" to him, including "silence, unreasonable delays, and apparent approval communicated to the UN of actions that the UN had taken" against Plaintiff, Rice is liable for fraud and harassment. *See id*. ¶¶ 91, 95, 97.

By way of relief, Plaintiff seeks compensatory damages, punitive damages, costs and fees, and a "full, thorough and independent investigation" of the alleged misconduct. *See id*. at 26. The Complaint does not specify as to which Defendant(s) Plaintiff seeks the various categories of relief. *See id*.

## II. LEGAL STANDARDS

### A. Motion to Dismiss for Lack of Subject Matter Jurisdiction under Rule 12(b)(1)

A court must dismiss a case pursuant to Rule 12(b)(1) when it lacks subject matter jurisdiction.  In determining whether there is jurisdiction, the Court may "consider the complaint supplemented by undisputed facts evidenced in the record, or the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Coalition for Underground Expansion v. Mineta,* 333 F.3d 193, 198 (D.C. Cir. 2003) (citations omitted).  "At the motion to dismiss stage, counseled complaints, as well as *pro se* complaints, are to be construed with sufficient liberality to afford all possible inferences favorable to the pleader on allegations of fact." *Settles v. U.S. Parole Comm'n,* 429 F.3d 1098, 1106 (D.C. Cir. 2005).

In spite of the favorable inferences that a plaintiff receives on a motion to dismiss, it remains the plaintiff's burden to prove subject matter jurisdiction by a preponderance of the evidence. *Am. Farm Bureau v. Envt'l. Prot. Agency,* 121 F. Supp. 2d 84, 90 (D.D.C. 2000). "Although a court must accept as true all factual allegations contained in the complaint when reviewing a motion to dismiss pursuant to Rule 12(b)(1), [a] plaintiff['s] factual allegations in the complaint . . . will bear closer scrutiny in resolving a 12(b)(1) motion than in resolving a 12(b)(6) motion for failure to state a claim." *Wright v. Foreign Serv. Grievance Bd.,* 503 F. Supp. 2d 163, 170 (D.D.C. 2007) (internal citations and quotation marks omitted).

### B. Motion to Dismiss for Failure to State a Claim under Rule 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) provides that a party may move to dismiss on the grounds that the complaint "fail[s] to state a claim upon which relief can be granted."  A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. (8)(a), "in order to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555

(2007) (citation omitted).  Although "detailed factual allegations" are not necessary to withstand a Rule 12(b)(6) motion to dismiss for failure to state a claim, a plaintiff must furnish "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action."  *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "Nor does a complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement."  *Id.* (citation omitted).  Rather, a complaint must contain sufficient factual allegations that, if accepted as true, "state a claim to relief that is plausible on its face."  *Twombly*, 550 U.S. at 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 663.

In evaluating a Rule 12(b)(6) motion to dismiss, a court must view the complaint in a light most favorable to the plaintiff and must accept as true all reasonable factual inferences drawn from well-pleaded factual allegations.  *In re United Mine Workers of Am. Employee Benefit Plans Litig.*, 854 F. Supp. 914, 915 (D.D.C. 1994); *see also Schuler v. United States*, 617 F.2d 605, 608 (D.C. Cir. 1979) ("The complaint must be 'liberally construed in favor of the plaintiff,' who must be granted the benefit of all inferences that can be derived from the facts alleged.").  While the court must construe the complaint in the plaintiff's favor, it "need not accept inferences drawn by the plaintiff if such inferences are unsupported by the facts set out in the complaint."  *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994).  Moreover, the court is "not bound to accept as true a legal conclusion couched as a factual allegation."  *Twombly*, 550 U.S. at 555 (citation omitted); *accord Taylor v. FDIC*, 132 F.3d 753, 762 (D.C. Cir. 1997).

# III. DISCUSSION

## A. Plaintiff's claims against the UN Defendants

The UN Charter provides that the UN "shall enjoy in the territory of each of its Members such privileges and immunities as are necessary for the fulfillment of its purposes." UN Charter art. 105, para. 1. The Convention on Privileges and Immunities of the United Nations (the "General Convention"), which was adopted by the UN shortly after the UN Charter and which the United States has ratified, defines the UN's privileges and immunities by providing that "[t]he United Nations, its property and assets wherever located and by whomsoever held, shall enjoy immunity from *every form of legal process* except insofar as in any particular case it has expressly waived its immunity." General Convention, art. II, sec. 2 (emphasis added).  Several federal courts that have addressed the issue have relied on the General Convention in recognizing the UN's absolute immunity from suit absent an express waiver by the UN.  *See, e.g., Brzak v. United Nations*, 597 F.3d 107, 112 (2d Cir. 2010); *Boimah v. United Nations General Assembly*, 664 F. Supp. 69, 71 (E.D.N.Y. 1987); *De Luca v. United Nations Org.*, 841 F. Supp. 531, 534 (S.D.N.Y. 1994).

In this case, the UN has not expressly waived its immunity.  To the contrary, it has affirmatively requested that the United States take steps to protect its privileges and immunities in this case.  *See* Gov't Stmt. of Interest, Ex. A (Feb. 26, 2013 Letter from Patricia O'Brien, Under-Secretary-General for Legal Affairs, to Rice) ("[W]e wish to advise that the United Nations expressly maintains its privileges and immunities" with respect to Plaintiff's lawsuit, and that "we respectfully request that the Government of the United States to take appropriate steps to ensure that the privileges and immunities of the United Nations are maintained in respect of this legal action.").  Accordingly, under the plain language of the General Convention, the UN

is immune from all legal process, including suit, and the Court therefore lacks subject matter jurisdiction over Plaintiff's claims against it. Further, the Court concludes that as a subsidiary program of the UN that reports directly to the General Assembly, the UNDP also enjoys immunity under the Convention and therefore Plaintiff's claims against it must also be dismissed for lack of subject matter jurisdiction. *See Sadikoglu v. United Nations Dev. Programme*, Civ. A. No. 11-0294 (PKC), 2011 WL 4953994 at *3 (S.D.N.Y. Oct. 14, 2011).

This conclusion is further supported by the International Organizations Immunity Act of 1945 ("IOIA"), 22 U.S.C. § 288a(b), which similarly provides that international organizations designated by the President "shall enjoy the same immunity from suit and every form of judicial process as is enjoyed by foreign governments, except to the extent that such organizations may expressly waive their immunity for the purpose of any proceedings or by the terms of any contract." The UN has been so designated. *See* Exec. Order 9698, 11 Fed. Reg. 1809 (Feb. 20, 1946).

Plaintiff asserts several arguments as to why the United Nations is not entitled to absolute immunity from legal process – none of which the Court finds availing. For instance, Plaintiff argues that even where an international organization such as the UN asserts immunity, the organization should nevertheless be required to at the very least submit to service and answer Plaintiff's Complaint "in order to protect the [c]onstitutional due process rights of Plaintiff." Pl.'s Response to Gov't Stmt. of Interest at 7. *See also id*. at 12 (seeming to argue that the UN has impliedly waived its immunity by failing to provide an adequate settlement mechanism for his contract dispute in violation of his due process rights and the UN's own obligations under the General Convention); *id*. at 11 (arguing that the Secretary-General has a duty to waive immunity in cases where such is necessary to protect an individual's fundamental rights).

These arguments need not detain the Court long, as Plaintiff points to no authority supporting his assertion that the immunity "from every form of legal process" conferred upon the UN by the General Convention is anything but absolute absent express waiver, and the Court is aware of none.   To the contrary, at least one Circuit to address the issue has firmly rejected Plaintiff's approach.   *See Brzak*, 597 F.3d at 114 ("The short-and conclusive-answer is that legislatively and judicially crafted immunities of one sort or another have existed since well before the framing of the Constitution, have been extended and modified over time, and are firmly embedded in American law. . . . If appellants' constitutional argument were correct, judicial immunity, prosecutorial immunity, and legislative immunity, for example, could not exist.   Suffice it to say, they offer no principled arguments as to why the continuing existence of immunities violates the Constitution.").

Additionally, Plaintiff appears to argue that the IOIA no longer confers absolute immunity on designated organizations in all cases because subsequent to the passing of that act, Congress passed the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. § 1602 *et. seq.*, which strips foreign sovereigns of their immunity in certain circumstances, including in "any case . . . in which the action is based . . .  upon an act outside the territory of the United States in connection with a commercial activity of the foreign state elsewhere and that act causes a direct effect in the United States." *Id*. § 1605(a)(2).   While the Court harbors doubt that Plaintiff – who has remained in Laos, *see* Compl. ¶ 73 – has suffered a "direct effect" in the United States resulting from the UN Defendants' alleged misconduct, even assuming that this could be shown, Plaintiff's argument must be rejected for two reasons.   First, even if the IOIA does not confer immunity in this case, Plaintiff has provided no explanation as to why the General Convention does not nevertheless serve as an independent source of the UN's absolute immunity.   Second,

Plaintiff's argument runs directly counter to binding Circuit authority finding that the IOIA does not incorporate the FSIA's commercial activity exception. *See Atkinson v. Inter-Am. Dev. Bank*, 156 F.3d 1335, 1341-42 (D.C. Cir. 1998) ("In light of this text and legislative history [of the IOIA], we think that despite the lack of a clear instruction as to whether Congress meant to incorporate in the IOIA subsequent changes to the law of immunity of foreign sovereigns, Congress' intent was to adopt that body of law only as it existed in 1945 – when immunity of foreign sovereigns was absolute. . . . The FSIA is 'beside the point' because it does not 'reflect any direct focus by Congress upon the meaning of the earlier enacted provisions' of the IOIA.") (quoting *Almendarez-Torres v. U.S.*, 523 U.S. 224, 237).   In view of this binding precedent, Plaintiff's heavy reliance on case law outside of this Circuit is misplaced. *See* Pl.'s Response to Gov't Stmt. of Interest at 15-16 (discussing *Oss Nokalva, Inc. v. European Space Agency*, 617 F.3d 756 (3d Cir. 2010)).

The Court has considered all other arguments asserted by Plaintiff on this issue and finds them without merit.   Accordingly, because the UN Defendants have not expressly waived their immunity to legal process in the instant suit, but, to the contrary, have expressly invoked such immunity, both the General Convention and the IOIA mandate dismissal of Plaintiff's claims against them for lack of subject matter jurisdiction.   For the same reason, Plaintiff's request for an order requiring the U.S. Marshals to serve the UN Defendants and to impose sanctions against them for the costs of effectuating service is denied.   *See* Pl.'s Mot.

## B.  Plaintiff's claims against Rice

Rice has moved to dismiss Plaintiff's claims against her, arguing that Plaintiff has failed to state any remotely plausible claim against her and that, in any event, none of the statutory provisions upon which Plaintiff purports to rely provide this Court with jurisdiction.   Before

addressing the merits of these arguments, the Court pauses to make an important observation about the nature of Plaintiff's submissions with respect to his claims against Rice – specifically, the confusion those submissions have caused to both Rice and this Court on the issue of whether Plaintiff intends to sue Rice in her individual or official capacity.

Plaintiff's Complaint consistently references the actions of Rice's "office" and describes the claims as constituting an "action against the U.S. Government," Compl. ¶ 2.  The Complaint also cites, as a basis for jurisdiction, the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2671 *et. seq.*, which provides a limited waiver of sovereign immunity that permits private parties to sue the *United States* for torts committed by federal employees acting within the scope of their employment.  For these reasons, the Court and Rice reasonably understood that Plaintiff was bringing an official capacity suit and was not seeking damages against Rice in her individual capacity.

However, Plaintiff's representations in his opposition brief and sur-reply suggest a different approach – albeit one not entirely clear to the Court.  On the one hand, Plaintiff expressly disclaims any intent to bring contract or tort claims against the United States and argues that instead, his Complaint should be construed as asserting a claim against Rice in her individual capacity pursuant to *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971).  *See* Pl.'s Opp'n at 34-36; Pl.'s Sur-Reply.  On the other hand, Plaintiff seems to argue that his electing to bring the suit under a *Bivens* theory is a mere attempt to "make it easiest for the Court and the parties to find remedies" among the many "alternative remedies," but that he does not "wish to preclude the [C]ourt from considering" any available remedies. *See* Pl.'s Opp'n at 32-36; *see also generally* Pl.'s Sur-reply.  The United States, understandably confounded by Plaintiff's shifting theories, has, out of an abundance of caution,

provided a Westfall certification from the Attorney General's designee, Rupa Bhattacharyya, Director, Torts Branch, Civil Division, Department of Justice. *See* Rice Reply, Ex. A. Therein, Ms. Bhattacharyya certifies that, pursuant to the Westfall Act, 28 U.S.C. § 2679(d)(1), she "find[s] that Susan E. Rice was acting in the scope of her federal office or employment at the time of the incidents out of which the plaintiff's claim arose." *Id.*

"The Federal Employees Liability Reform and Tort Compensation Act of 1988, commonly known as the Westfall Act, accords federal employees absolute immunity from common-law tort claims arising out of acts they undertake in the course of their official duties." *Osborn v. Haley*, 549 U.S. 225, 229 (2007) (citing 28 U.S.C. § 2679(b)(1)). "When a federal employee is sued for wrongful or negligent conduct, the Act empowers the Attorney General to certify that the employee 'was acting within the scope of his office or employment at the time of the incident out of which the claim arose.'" *Id.* at 229-30 (citing § 2679(d)(1),(2)). "Upon the Attorney General's certification, the employee is dismissed from the action, and the United States is substituted as defendant in place of the employee. The litigation is thereafter governed by the Federal Tort Claims Act[.]" *Id.* at 230.

Here, Plaintiff has proffered no facts establishing that Rice's actions exceeded the scope of her employment that would undermine the Westfall certification. *See Minnick v. Carlile*, --- F. Supp. 2d ---, 2013 WL 2306154, * 2-6 (D.D.C. 2013). Accordingly, to the extent Plaintiff has asserted tort claims against Rice in her individual capacity, the Court shall substitute the United States as Defendant in her place. *See id.* Having clarified this matter, the Court may now commence its discussion of the pending motion to dismiss.

**1. Count I: Breach of Contract**

The Complaint alleges that Rice is "jointly and severably [sic] liable" for the UN's alleged breach of its contract with Plaintiff. *See id.* ¶ 82. This claim need not detain the Court long. As aforementioned, and notwithstanding the plain language of the Complaint, Plaintiff's opposition brief appears to disclaim any intent to bring a claim for breach of contract against Rice or the United States. *See* Pl.'s Opp'n at 8-10, 31-32. Accordingly, the Court could dismiss Count I as abandoned.

Furthermore, to the extent that Plaintiff has not intended to abandon his contract claim, the claim requires dismissal under Rule 12(b)(6) for failure to state a claim. To be sure, the United States has also argued that Plaintiff's contract claim against it should be dismissed under Rule 12(b)(1) for lack of subject matter jurisdiction under the Tucker Act, 28 U.S.C. § 1491, or alternatively, the Little Tucker Act, 28 U.S.C. § 1346(a).[5] As a general matter, courts should consider Rule 12(b)(1) challenges to its subject matter jurisdiction before assessing the legal sufficiency of a claim under Rule 12(b)(6). *See U.S. ex rel. Settlemire v. District of Columbia*, 198 F.3d 913, 920 (D.C. Cir. 1999). "An exception to this rule exists, however, when the plaintiff's claim has no plausible foundation." *U.S. v. Morten*, 730 F. Supp. 2d 11, 14 (D.D.C. 2010) (internal alterations, quotes, and citations omitted). In the instant case, the Court may proceed directly to the 12(b)(6) analysis because Plaintiff's contract based claim clearly lacks plausible foundation.

---

[5] Specifically, the United States argues that this Court lacks subject matter jurisdiction over the claim under the Tucker Act which confers upon the United States Court of Federal Claims exclusive jurisdiction over "cases involving non-tort money damages in excess of $10,000," *Tootle v. Sec'y of the Navy*, 446 F.3d 167, 169 (D.C. Cir. 2006), *see* 28 U.S.C. § 1491(a)(1). Alternatively, to the extent Plaintiff's contract claim against Rice is for less than $10,000, the United States argues that the Court lacks jurisdiction under the Little Tucker Act because Plaintiff has failed to identify a substantive right to money damages as is required to support a claim under that act.

"A contract is a promise or set of promises for the breach of which the law gives a remedy, or the performance of which the law in some way recognizes as a duty. A contract has certain essential elements, to wit, competent parties, lawful subject matter, legal consideration, mutuality of assent and mutuality of obligation[.]" *Henke v. U.S. Dep't of Commerce*, 83 F.3d 1445, 1450 (D.C. Cir. 1996) (internal citations and quotations marks omitted). Here, the Complaint contains not even a conclusory assertion – and certainly no factual allegations whatsoever – to support the existence of a contract between Plaintiff and either Rice or any other entity of the United States Government. Accordingly, Count I – Plaintiff's breach of contract claim – is dismissed with respect to Rice for failure to state a claim upon which relief can be granted. This holding applies to the claim insofar as Plaintiff intended to assert it against Rice in her official capacity and/or her individual capacity, as the Complaint alleges no contract with her in either capacity.

### 2. Count II: Fraud

As with Plaintiff's contract claim, Plaintiff's opposition brief also appears to disclaim any intent to bring a claim for fraud against Rice or the United States. *See* Pl.'s Opp'n at 8-10, 31-32. Accordingly, the Court could dismiss Count II as abandoned. To the extent that Plaintiff has not intended to abandon his fraud claim, the Court must construe Count II as a tort claim against the United States under the FTCA in view of the Government's Westfall certification, *see supra* Part III.B. This is because, "[w]here a plaintiff seeks monetary damages against a federal agency for torts committed by federal employees, the [FTCA] is the only possible basis for jurisdiction." *Jones v. U.S.*, --- F. Supp. 2d ---, 2013 WL 2474352, *2 (D.D.C. 2013) (citation omitted). *See also* 28 U.S.C. § 2679 (b) (1) ("The remedy against the United States provided by [the FTCA] for … loss of property … arising or resulting from the negligent or wrongful act or omission of

any employee of the Government while acting within the scope of his office or employment is *exclusive of any other civil action or proceeding for money damages by reason of the same subject matter[.]*"). (emphasis added).

Before bringing an FTCA claim, a plaintiff must "file [with the agency] (1) a written statement sufficiently describing the injury to enable the agency to begin its own investigations, and (2) a sum-certain damages claim." 28 U.S.C. § 2675(a).  Here, Plaintiff has failed to fulfill this administrative filing requirement, which is a jurisdictional prerequisite to suit.  *GAF Corp. v. U.S.*, 818 F.3d 901, 904 (D.C. Cir. 1987).  While Plaintiff purports to rely on a November 9, 2011 letter to the State Department tilted "Hoping to Avoid a Lawsuit," Plaintiff has not provided a copy of this letter, and his description of its contents does not satisfy the criteria established by the FTCA.  For instance, Plaintiff describes the letter as containing an itemization of specific claims for damages that were sent to the *UN's* legal office (with notification to Rice's office), but says nothing of Plaintiff's identification of claims or damages against *Rice* or the *US Government*. *See* Pl.'s Sur-reply at 19; *see also* Compl. ¶ 62 (alleging that "[o]n or about November 9, 2011, [Plaintiff] delivered a letter to Ms. Dickey[, Deputy Chief of Mission of the U.S. Embassy,]  "Hoping to Avoid a Lawsuit" *noting the prospects of negotiating a solution with Mr. Minh Pham[,UNDP Laos Resident Coordinator] with the help of the Embassy*") (emphasis added).  Furthermore, even if the letter did include both a "written statement" of the injury and "sum-certain damages claim" resulting from the alleged misconduct of Rice and/or the United States Government, as opposed to the UN, it clearly could not have served as a final filing, as is required under the act, in view of the fact that it could not possibly have captured Plaintiff's claims for Rice's *future* action (or, as Plaintiff alleges, inaction) in failing to respond to this letter or to waive the UN's sovereign immunity. *See Edwards v. Dist. of Columbia*, 616 F. Supp. 2d

15

112, 117 (D.D.C. 2009) ("[b]ecause § 2675(a) of the FTCA requires that an administrative claim be finalized at the time the complaint is filed, plaintiff's complaint cannot be cured through amendment, but instead, plaintiff must file a new suit.") (internal citation and quotations marks omitted).   Accordingly, because Plaintiff has failed to demonstrate that he exhausted his administrative remedies before filing suit, the Court must dismiss Plaintiff's fraud claim for lack of subject matter jurisdiction.

Finally, even if Plaintiff had satisfied the administrative filing requirements of the FTCA, Plaintiff's claim for fraud would require dismissal under Rule 12(b)(6) for failure to state a claim.  Under District of Columbia law:

> Fraud is never presumed and must be particularly pleaded. It must be established by clear and convincing evidence, which is not equally consistent with either honesty or deceit. The essential elements of common law fraud are: (1) a false representation (2) in reference to material fact, (3) made with knowledge of its falsity, (4) with the intent to deceive, and (5) action is taken in reliance upon the representation. . . . . One pleading fraud must allege such facts as will reveal the existence of all the requisite elements of fraud. Facts which will enable the court to draw an inference of fraud must be alleged, and allegations in the form of conclusions on the part of the pleader as to the existence of fraud are insufficient.

*Bennett v. Kiggins*, 377 A.2d 57, 59-60 (D.C. 1977) (emphasis added).

Here, the Complaint's only "fraud" allegation even mentioning Rice reads as follows:

> Plaintiff also made the office of Ambassador Rice aware of the [UN's] alleged fraud and asked for specific assistance to present such information and to promote oversight and reforms in the U.N. system consistent with the U.S. role. He told the office that their transfer of his letter directly to the U.N. without any comment would likely have made his situation worse.  By not responding and by informing the U.N. of these allegations in ways that could have promoted the delays as a form of retaliation against [Plaintiff], Ambassador Rice's office is also liable for the alleged fraud and ensuing harms.

Compl. ¶ 91.

Suffice it to say, allegations that Rice did "not respond[ ]" to a letter requesting assistance in a contract dispute between Plaintiff and the UN, and "forward[ed]" "without comment" such letter to the UN are insufficient to state a claim for fraud.  The Complaint nowhere alleges that Rice or her office made a false representation of any sort, and Plaintiff's conclusory argument asserted in his opposition brief that Rice and/or the United States are, for some unexplained reason, "jointly liable" for the alleged fraudulent conduct of the United Nations is entirely without support.

For all of the foregoing reasons, Count II – Plaintiff's fraud claim against Rice in her official capacity – is dismissed.

### 3. Count III: Harassment

Plaintiff also contends that Rice's response to his request for assistance, her silence, and her unreasonable delays "were causing harm that could be considered a form of harassment" and that she was aware her actions were having this effect.  Compl. ¶ 95–97.  As explained in detail *supra* Part III.B.2, Plaintiff has failed to satisfy the administrative filing requirements of the FTCA, and his "harassment" claims against Rice require dismissal on this ground alone.

Further, even if Plaintiff had satisfied the administrative filing requirements of the FTCA, this claim would require dismissal under Rule 12(b)(6) for failure to state a claim.  Plaintiff has presented no authority supporting a common law cause of action for "harassment" based on the actions of Rice as pled in his Complaint, and the Court is aware of none.  Accordingly, for lack of subject matter jurisdiction under the FTCA as discussed above and for failure to state a claim for which relief can be granted, Count III – Plaintiff's "harassment" claim against Rice in her official capacity – is dismissed.

**4. Constitutional *Bivens* claims against Rice in her personal capacity**

Perhaps having realized the jurisdictional barriers to Plaintiff's tort claims against Rice in her official capacity, Plaintiff argues – for the first time in his opposition brief – that Rice should be held liable in her individual capacity under a *Bivens* theory.  In *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971), the Supreme Court "recognized for the first time an implied private action for damages against federal officers alleged to have violated a citizen's constitutional rights." *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 66 (2001).  For the below reasons, the Court declines to entertain this alternative theory of liability.

Preliminarily, the Court notes that Plaintiff did not bring a *Bivens* claim in his Complaint nor even articulate any violation of his constitutional rights.  The handful of cursory references to the constitutional guarantees of "due process of law" asserted in Plaintiff's general allegations in connection with the UN's alleged failure to perform on its contract with Plaintiff (and Rice's alleged failure to intervene in the resulting contractual dispute or to waive the UN's immunity), *see* Compl. ¶¶ 2, 42, 48, 64, 65, 71, are highly vague and simply insufficient to provide Rice "fair notice of what the . . . claim is and the grounds upon which it rests."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted).  Nor has Plaintiff effectuated service upon Rice in her individual capacity in accordance with Federal Rule of Civil Procedure 4(i)(3), as is required for *Bivens* suits against federal officials, *see Toms v. Hantman*, 530 F. Supp. 2d 188, 190-91 (D.D.C. 2008).  *See* Aff. of Process Server, ECF No. [4] (purported proof of service on Rice in her *official* capacity, in accordance with Fed. R. Civ. P 4(i)(2)).

While Plaintiff's opposition brief makes clear – for the very first time – his intent to proceed under *Bivens*, "it is axiomatic that a complaint may not be amended by the briefs in opposition to a motion to dismiss." *Arbitraje Casa de Cambio, S.A. de C.V. v. U.S. Postal*

*Service*, 297 F. Supp. 2d 165, 170 (D.D.C. 2003) (internal quotes and citations omitted).  Further, to the extent Plaintiff's sur-reply – which is itself far from a model of clarity – requests that the Court permit him, if necessary, to amend the Complaint, the Court must deny this request for two reasons.  First, as Plaintiff has not filed a motion for leave to amend the Complaint, nor attached a proposed amended pleading, pursuant to Federal Rule of Civil Procedure 15(a)(2) and Local Civil Rule 7(i), the Court declines to construe Plaintiff's passing request, utterly devoid of factual content, as a proper motion for leave to amend.  *See also Confederate Mem'l Ass'n, Inc. v. Hines*, 995 F.2d 295, 299 (D.C. Cir. 1993) ("[A] bare request in an opposition to a motion to dismiss – without any indication of the particular grounds on which amendment is sought – does not constitute a motion [to amend] within the contemplation of Rule 15(a).").

Second, even if the Court were to construe generously Plaintiff's sur-reply as a proper motion to amend, the Court would in any event deny the motion.  Pursuant to Federal Rules of Civil Procedure 15(a), "a party may amend its pleading only with the opposing party's written consent or the court's leave," and "[t]he court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2).  However, the Court "may properly deny a motion to amend if the amended pleading would not survive a motion to dismiss." *In re Interbank Funding Corp. Securities Litig.*, 629 F.3d 213, 218 (D.C. Cir. 2010). "An amendment is futile if the proposed claim would not survive a motion to dismiss." *Commodore–Mensah v. Delta Airlines, Inc.*, 842 F. Supp. 2d 50, 52 (D.D.C. 2012) (citation omitted); *see also Bean v. U.S.*, 538 F. Supp. 2d 220, 228 (D.D.C. 2008).

Here, any *Bivens* action premised on the conduct alleged in the Complaint would not survive a motion to dismiss for failure to state a claim upon which relief can be granted.  To state a claim under *Bivens*, a plaintiff must allege that the defendant federal officer was personally

involved in conduct which violated the plaintiff's constitutional rights.  *Simpkins v. District of Columbia Gov't*, 108 F.3d 366, 368-69 (D.C. Cir. 1997).   Further, "[g]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  While both Plaintiff's opposition memorandum and sur-reply are replete with nebulous invocations of his "vested property right expectations" and "due process" rights to remedy the UN's alleged breach of contract and related misconduct, Plaintiff offers no facts – *none* – which would even remotely support a finding that Rice violated any constitutional rights of Plaintiff, let alone that she should have known that she was doing so.  Nor does Plaintiff even cite any constitutional or other authority imposing a duty on the Ambassador to the UN to assist private individuals with their employment related disputes with the UN.

For this reason, the Court finds that any amendment to Plaintiff's Complaint to assert a constitutional claim against Rice in her individual capacity would be futile because, based on the facts alleged, such claim would in any event require dismissal under Rule 12(b)(6).  *See, e.g., Harris v. Holder*, 885 F. Supp. 2d 390, 398-99 (D.D.C. 2012) (former Air Force contract employee failed to state *Bivens* claim against Attorney General for "intentionally trampl[ing] on [her] constitutional rights" by effecting her termination from six jobs and by "fail[ing] to eliminate, condemn, or seriously investigate" alleged illegal conduct by her former government employers where employee's complaint was replete with labels and legal conclusions broadly asserting First and Fifth Amendment violations but devoid of factual allegations); *Gary v. Pa. Human Relations Comm'n*, No. 10–1844, 2012 WL 931082, at *5 (E.D. Pa. Mar. 20, 2012) (dismissing *Bivens* claim against federal employee where complaint's "allegations are . . . , at

best, boilerplate allegations amounting to conclusions of law which are entirely lacking in factual substance"), *aff'd,* 497 F. App'x 223 (3d Cir. 2012) (per curiam).

**5. Plaintiff's request for injunctive relief**

In addition to his contract, fraud, and harassment claims, Plaintiff requests that the Court order an "independent investigation" of the UN's alleged misconduct.   *See* Compl. at 26. However, Plaintiff provides no jurisdictional or other authority for the proposition that this Court may order the current Ambassador to the UN or any other officer or entity to investigate the UN's conduct relating to its employment contracts with private individuals.

## IV. CONCLUSION

The Court has considered all remaining arguments and theories proffered by Plaintiff and finds them likewise without merit.  Accordingly, for the reasons stated herein, Plaintiff's motion for court service upon, and sanctions against, the UN Defendants is DENIED, and Rice's motion to dismiss is GRANTED.  This case is dismissed in its entirety.

An appropriate Order accompanies this Memorandum Opinion.

_____/s/_____
**COLLEEN KOLLAR-KOTELLY**
United States District Judge