## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA



DAVID H. LEMPERT,
c/o Walter Schwartz
110 Crestview Place
Ardsley, NY 10502
(A U.S. citizen residing overseas,
with most recent U.S. residence in
the District of Columbia)
                    Plaintiff,

v.

_____

SAMANTHA POWER[1],
U.S. AMBASSADOR TO THE
UNITED NATIONS,
Washington, D.C.
                    Defendant

UNITED NATIONS and
UNITED NATIONS
DEVELOPMENT PROGRAMME,
Washington, D.C.
                    Defendant.

Case: 1:12-cv-01518
Assigned to: Kollar-Kotelly, Colleen
Assign Date: 9/13/2012
Description: Contract

### PLAINTIFF'S MOTION TO RE-OPEN JUDGMENT

### INTRODUCTION

Plaintiff brings this Motion, at the direction of the Court, under Federal Rules of

Civil Procedure Rule 60 (b):  Relief from Judgment or Order and Rule 59 (e):  Motion to

Alter or Amend a Judgment, in timely response to the Court's Order of August 27, 2013.

---

[1] Pursuant to the Court's order of August 27, 2013 and Federal Rule of Civil Procedure 25 (d) "Public Officer Death or Separation from Office", this action is now renamed to substitute Defendant Susan Rice with her successor in the post of U.S. Ambassador to the United Nations, Samantha Power. "The officer's successor is automatically substituted as a party." While the name of the case has changed, Plaintiff seeks to maintain his claim in alternative theories: against Defendant Susan Rice in her personal capacity, under a *Bivens* claim, for which the U.S. government is now substituted as a party through *Westfall* certification, and against her office, the office off the U.S. Ambassador to the United Nations, on other theories of recovery.

1

RECEIVED
Mail Room
SEP 1 6 2013
Angela D. Caesar, Clerk of Court
U.S. District Court, District of C...

On August 8, 2013, within 28 days of the Court's Memorandum Opinion of July 19, 2013, Plaintiff filed a Motion to Amend the Complaint with Leave of the Court and for the Court to Amend its Findings in its Memorandum Opinion. Plaintiff brought that Motion under Federal Rules of Civil Procedure Rules 15 (b), 12 (d), 52 (b), and 61 and the Rules of the United States District Court for the District of Columbia, LCvR 7 (n) and (i) and LCvR 5.3 with the specific purpose of providing the Court with an Amended Complaint and Appendix as well as a Memorandum Amending Proof of Service on Defendant Susan Rice.

In this Memorandum, Plaintiff offers his previous sworn statements here again, so that the Court need not refer back to the previous Motion to Amend, noting those justifications under other Federal Rules that are also incorporated into FRCP Rules 59 (e) and 60 (b) and that are designed precisely for cases like this one. This is a case where Plaintiff's fundamental constitutional rights are at stake, where those rights are jeopardized by the Court's Findings that would dismiss the case, and where Plaintiff believes harmless errors in his pleading can be corrected by amendment. The Amended Complaint, Appendix and Memorandum Amending Proof of Service provide the detail that the Court found insufficient in Plaintiff's original complaint to sustain an action against Defendant Susan Rice / Samantha Power and offers the clarity on theories for sustaining actions against both Defendants. Plaintiff believes the Amended Complaint now clearly meets the standard that this Court has set to survive a motion to dismiss.

In this Memorandum, Plaintiff also takes the opportunity under FRCP 60 (b) (3) to bring information to the Court's attention with regard to the Department of Justice (DoJ)'s representations to this Court that the Court could find amount to "fraud …

misrepresentation or misconduct by an opposing party" with respect to the immunity of Defendant United Nations and United Nations Development Programme ("UN/UNDP") and to the duties of Defendant Susan Rice in qualifying that immunity in order to protect fundamental rights of U.S. citizens. This information can assist the Court in interpreting the actual limitations on U.N. immunity that are recognized by the U.S. Government as well as the duties recognized by Defendant Susan Rice/ Samantha Power and the U.S. government with regards to protecting fundamental rights of U.S. citizens.

Plaintiff also offers a fuller explanation to the Court under FRCP 60 (b) (1) of his "mistake, inadvertence, surprise or excusable neglect" and (6) "other reason that justifies relief" and also appeals to the Court's use of its "powers to grant relief" under section (d).

## INFORMATION PRESENTED TO THE COURT TO SUPPORT RELIEF FROM JUDGMENT

**I.** **PLAINTIFF RE-AVERS STATEMENTS TO THE COURT IN SUPPORT OF HIS PREVIOUS MOTION THAT THIS MOTION NOW REPLACES, OFFERING DETAIL THAT THE COURT REQUIRES IN PLAINTIFF'S COMPLAINT TO SUSTAIN PLAINTIFF'S SUIT**

In bringing this Motion now under FRCP 59 (e) on Motion to Alter or Amend a Judgment, rather than under FRCP 52 (b) on Findings and Conclusions by the Court and Amended or Additional Filings, Plaintiff notes again that he has met the 28 day requirement for a motion under FRCP 52 (b) and that the Court has granted leave for re-filing. FRCP 60 (b) and (c) also allow Plaintiff to present such information "within a reasonable time".

As before, Plaintiff begs the Court to consider altering or amending its judgment after considering the Amended Complaint, including the documents that were in sworn

statements in the original Complaint and available to Defendant Susan Rice but that were not on file with the Court. These are again offered to the Court in the Appendix to the Amended Complaint and in Plaintiff's Memorandum Amending Proof of Service.

As Plaintiff previously noted, in citing FRCP 12 (d) that allows parties "a reasonable opportunity to present all the material that is pertinent" to a Motion for Dismissal under Rule 12 (b) (6) in regard to matters outside the pleadings, Plaintiff now makes a similar appeal under Rule 60 (b) (6). Plaintiff seeks to present the material that the Court has identified as pertinent to its decision in its Memorandum Opinion of July 19, 2013. An inability to present this material would prejudice Plaintiff's claim.

The material that Plaintiff presents in the Amended Complaint is not in the form of new arguments but simply amends the original Complaint to address those concerns that the Court has brought to Plaintiff's attention in response to *Plaintiff's Motion to Query the Court on Issues Regarding Amendments to the Complaint and/or Service*. dated June 18, 2013.

In that motion of June 18, 2013, Plaintiff raised queries under FRCP 15 (a) 2), which allows Plaintiff to amend his complaint "with the opposing party's written consent or the court's leave." In this case, since lack of clarity and documentation in the Complaint are viewed by this Court as grounds for Dismissal of parts of the complaint, Plaintiff would be prejudiced by an inability to provide such amendment. According to FRCP 15 (a) 2), "The court should freely give leave when justice so requires." Similarly, under FRCP 60 (b) (1) and (6), the Court should offer such an opportunity to the Plaintiff as a result of Plaintiff's earlier query and any "inadvertence" or "excusable neglect" or "mistake" by Plaintiff in not providing this earlier.

4

The Court granted Plaintiff's Sur Reply: *Plaintiff's Motion to Query the Court on Issues Regarding Amendments to the Complaint and/or Service*. dated June 18, 2013 and responded fully to the queries in its *Memorandum Opinion* of July 19, 2013, with detailed explanations of why the Court considered defects to be grounds for dismissal. Plaintiff respects this guidance from the Court and has acted accordingly.

Plaintiff notes that he was not the only lawyer who was uncertain as to the amount of detail to be presented within the Complaint itself, including specific theories of recovery, in an attempt to meet the requirements of FRCP 8 for "short and plain statements" of the claim, jurisdiction, and demands for relief that would be respectful of the time of the Court and of the parties. At least nine other lawyers read and reviewed Plaintiff's draft and original complaint, including Plaintiff's previous attorney and Plaintiff's power of attorney. Though all were aware of Plaintiff's theory of recovery and issues in the case, none suggested the need for additional specificity at the time of filing.

Plaintiff's continual requests to Defendant Susan Rice for her help, with detail of the help requested and relief sought at different times, with explanations of the basis for the request and the accruing harms to Plaintiff by inaction; Defendant Susan Rice's responses that continued to transfer responsibility to Defendant United Nations with the knowledge that Plaintiff had no available remedy there; and the record of Defendant Susan Rice's silence in response to Plaintiff's continual requests were referenced in Plaintiff's declarations in the initial complaint. Plaintiff's communications to Defendant Susan Rice, personally and individually, to the Legal Adviser of the U.S. Department of State, to the U.S. Embassy in Laos, and to the Department of State through Congress, alerting them to the likelihood of a lawsuit in which Susan Rice and/or the U.S.

5

government would be a Defendant, alerting them to claims and also making several attempts to allow for consideration of the claims and attempts to find solutions in order to avoid a lawsuit were also referenced in the Complaint. However, Plaintiff was similarly uncertain how much of the actual record the Court wished to see at this stage of the proceedings and in response to Defendant Susan Rice's motions and Memoranda from the Department of Justice.

Plaintiff again notes the Rules of the United States District Court for the District of Columbia, LCvR 7 (n) that Plaintiff sought to rely on for providing those documents that Plaintiff believes the Court would need to review in considering altering, amending or relieving its judgment under FRCP 59 (e) and 60 (b).

LCvR 7 (n) requires that Plaintiff "provide the Court with an appendix containing copies of those portions of the administrative record that are cited or otherwise relied upon in any memorandum in support of or in opposition to any dispositive motion".

Since the sufficiency of the Complaint is at issue here, Plaintiff has provided this documentation as the Appendix to the Complaint, and has clearly referenced them within Plaintiff's declarations in the now Amended Complaint. Plaintiff has provided those documents that the Court has suggested it requires in order to protect Plaintiff's claims that are now presented more clearly in the Amended Complaint. The Court received both the Amended Complaint and the Appendix as of August 8, 2013. Plaintiff references and provides them again with this Motion.

Plaintiff is open to agreement with Defendant Susan Rice/ Samantha Power on any other documents in the administrative record that should be included if there are any

that are relevant and that have already been available to Plaintiff and Defendant Susan

Rice/ Samantha Power.

Plaintiff does not believe that the Defendants are in any way adversely affected by

any omissions or lack of clarity in the original Complaint that Plaintiff has corrected in

the Amended Complaint. Defendant Susan Rice had access to all materials referenced in

the complaint and now they are available to her replacement, Ambassador Samantha

Power. Plaintiff and his lawyer sought to make his theories of recovery and liability clear

to Defendants and also to Defendants' lawyers. Plaintiff did not hide any documents and

any lack of clarity was not meant to prejudice any of the parties. Plaintiff has sworn in

pleadings before this Court that his intent has been to work with Defendants to improve

procedures in U.N. oversight that he believes are failing and to promote the interests of

both Defendants as specified in the U.N. General Convention and their abilities to fulfill

their obligations to further the purposes of the U.N. Charter. Plaintiff's Amended

Complaint contains no new authorities and no theories that were not already presented to

the Court and to Defendant Susan Rice in Plaintiff's pleadings. The Amended Complaint

seeks to make Plaintiff's presentations to the Court simpler and clearer, within the

framework of the Amended Complaint.

Plaintiff also presented with his previous Motion, a short Memorandum

Amending Proof of Service on Defendant Susan Rice that the Court received on August

8, 2013. That Memorandum is now presented again to the Court. Under United States

District Court for the District of Columbia Local Rule LCvR 5.3, "The Court may at any

time allow the proof to be amended." Such proof shall show the "manner or service."

Though Plaintiff's failure to make this proof "does not affect the validity of service",

both the Department of Justice and the Court have now questioned whether Plaintiff's

service on Defendant Susan Rice was in her personal capacity. Plaintiff presents

documentation both of his intent and the difficulties that the U.S. State Department

creates for any Plaintiff seeking to serve a defendant employed by the U.S. State

Department, in an individual capacity under a *Bivens* claim.

      If Plaintiff has made errors in not presenting the Court sufficient clarity or

documentation, he begs the Court to consider those errors as simply due to Plaintiff's

inexperience in some of the areas of law and procedures in this case and to recognize that

Plaintiff is at a disadvantage as a lone lawyer facing the Department of Justice of the

United States and its team of lawyers as well as any lawyers and staff within the office of

Defendant Susan Rice/ Samantha Power and the Legal Adviser's Office of the U.S.

Department of State, many of whom work full time, on salary, in these areas of the law

and in the Federal Courts in the District of Columbia. It is the purpose of Rule 60 (b) (1)

and (6) to protect citizens like the Plaintiff, including those acting pro se, even if they

may be lawyers, particularly where fundamental rights are at stake.

      Plaintiff again references FRCP 61, noting that any errors have been harmless and

that "At every stage of the proceedings, the court must disregard all errors and defects

that do not affect any party's substantial rights." This consideration is also incorporated

into FRCP 60 (b).

      While Plaintiff's livelihood and future income are at stake in this case, Plaintiff

does not believe that any substantial rights of Defendant Susan Rice are in jeopardy here,

particularly now that she is Westfall certified. Plaintiff has continually argued in

pleadings that cases like this one actually bring benefit to the United States and to the

Office of the U.S. Ambassador to the United Nations by helping to alert them to areas for strengthening U.S. oversight of the United Nations to assure it meets it treaty obligations while routinizing the powers of the U.S. and of U.S. citizens to participate in holding the U.N. accountable.

A copy of the Amended Complaint and its Appendix, that were delivered to the Court on August 8, 2013, attached to Plaintiff's previous Motion, and Plaintiff's Memorandum Amending Proof of Service on Defendant Susan Rice can be filed with the Court following an affirmation of the Motion and the Court Order.

Plaintiff believes that all documents presented in the Appendix to Plaintiff's Amended Complaint can be considered public documents to and from the Parties. However, Plaintiff wishes to note that the e-mail addresses of Susan Rice may not be in the public domain. Plaintiff accessed her e-mail through the Stanford Alumni website, to which both Susan Rice and Plaintiff have access. That email address is presented here on documents to verify efforts by Plaintiff to assure that Defendant Susan Rice had personal knowledge of Plaintiff's situation, her responsibilities, and Plaintiff's requests for assistance. For protection of Susan Rice's privacy, the Court may wish to hide that address in the public record by crossing out the address and replacing it with a designation such as "Susan Rice's personal email". The address appears in six places; once each in Appendix Exhibits 8, 10, 12, and 13 and twice in Appendix Exhibit 16.

II.     **STATEMENTS MADE TO THE COURT BY THE DEPARTMENT OF JUSTICE (DOJ) AND ON WHICH THE COURT HAS RELIED IN DISMISSING PLAINTIFF'S CLAIM AGAINST THE DEFENDANT UN/UNDP AND AGAINST DEFENDANT SUSAN RICE/ SAMANTHA POWER ON A *BIVENS* CONSTITUTIONAL RIGHTS CLAIM, APPEAR TO BE MISREPRESENTATIONS AND OFFER A BASIS FOR RE-OPENING THE JUDGMENT**

While the Department of Justice ("DoJ") certainly has the right to make those arguments it sees fit in representing the interests of the U.S. government, DoJ also has the duty not to mislead the Court or to jeopardize Plaintiff's rights and particularly not to jeopardize the fundamental rights of a U.S. citizen. DoJ appears to have misled the Court in three areas in seeking to dismiss this case; two of which have recently come to light in the press and after Plaintiff's previous Memoranda were filed and a third in *Defendant's Opposition to Plaintiff's Motion for Leave to File a Sur-Reply*, July 8, 2013, to which Plaintiff now replies. Plaintiff asks the Court to consider DoJ's representations in light of Rule 60 (b) (3) in which "fraud, misrepresentation or misconduct" may be grounds for relief and amending of a judgment.

a) <u>DoJ knows or should know that UN immunity is not absolute and is in fact subject to a balancing test, but has argued the opposite to this Court. Recent articles widely circulated in the press now make this information available to the Court and provide a basis for the Court to re-open this case against Defendant UN/UNDP.</u>

DoJ has continually told this Court that "the UN is absolutely immune from suit and all legal process" (*Statement of Interest of the United States of America*, May 3, 2013, page 3). DoJ has repeatedly argued that Article II of the *General Convention on the Privileges and Immunities of the United Nations* ("General Convention"), 21 U.S.T. 1418, 1 U.N.T.S. 16 (Feb. 13, 1946), establishes "bsolute" rather than conditional immunity of the U.N. with regard to any invasive activity of any kind by any U.S. government agency, including those activities that would go farther than a lawsuit. DoJ

has told this Court that the U.N.'s "property and assets wherever located and by whomsoever held" are sacrosanct with no opportunity even for the Court to apply a balancing test with regard to any kind of intrusion in the U.N. (*SoI*, page 7).

The word "absolute" is not in the *General Convention* treaty, but DoJ has taken holdings from court cases that Plaintiff has argued are limited, out of context and not applicable to this case, to argue a doctrine of such "absolute immunity". DoJ has told this Court that "The United States understands this provision to mean what it unambiguously says: the UN, including its integral component the UNDP, enjoys absolute immunity … unless the UN itself expressly waives its immunity." (*SoI*, page 8). DoJ has also told this Court that the President cannot use the powers under the *International Organizations Immunities Act* ("IOIA"), 22 U.S.C. § 288, to allow the administration to waive any parts of the U.N.'s immunity (*SoI*, page 10). DoJ's Motion to Dismiss (*Defendant Susan E. Rice's Motion to Dismiss* of May 3, 2013), reiterated this claim to the Court, "This statute, however, neither requires nor authorizes the United States to waive the UN's immunity, which is absolute and subject only to the UN's own express waiver." (*MTD*, May 3, 2013, page 9).

DoJ has told the Court that the U.S. government, itself, had "interpreted [the *General Convention*'s] language to mean precisely what it says: namely, that the UN, including the UNDP, is absolutely immune from all legal process unless the UN, and the UN alone, "expressly" waives its immunity" (*Reply in Support of Statement of Interest of the United States of America*, June 10, 2013, page 2).

In its *Memorandum Opinion* of July 19, 2013, the Court has also relied on this belief in dismissing Plaintiff's claim against Defendant UN/UNDP, noting that the Court was "aware of [no]" exceptions to U.N. immunity (page 7 and 9).

From a stream of newspaper reports around the globe in the past month, DoJ's statements to this Court now appear to be patently false.  The U.S. government has consistently overridden the U.N.'s "absolute" immunity against any kinds of invasion of its premises, communications and activities, and that such activities have even included monitoring the office of the U.N. Secretary General.  While the U.S. government may have acted on its own authority, it also is very likely to have made arguments to the Court that it had a Constitutional right and duty to consider the U.N.'s immunity conditional on U.S. interest and subject to a balancing test.

Plaintiff begs the Court to take constructive notice of articles that are widely available in the U.S. press including the *International Herald Tribune* of *The New York Times* (July 1, 2012) *The Christian Science Monitor* and even on the Internet.  Plaintiff presents one of these stories from the Internet in the Annex to this Motion ("NSA May Have Spied on U.N.:  Big Deal?  Or Business as Usual?" that appeared on Tuesday, August 27, 2013 at: http://www.cypoint.com/nsa-may-spied-on-uts-deal-business-usual-2138139.html.)

According to these reports, "For the US, the UN has been an intelligence target for years, if not decades."  (*Id.*)  This article and others reference the *General Convention on Privileges and Immunities of the U.N.* and demonstrate that the U.S. government has acted to limit the immunity and to consider it conditional on U.S. interests; directly contradicting the statements by DoJ to this Court that it views such immunity as "absolute", not subject to any kind of qualification or balancing test and without any exceptions, ever, by the U.S. government.

The direct implication of these stories is that DoJ has considered the *General Convention* with the U.N. as creating conditional and not absolute immunity and that it

has held this position for a long time.  Moreover, the current Administration (and likely previous Administrations) almost certainly defend this qualification and limitation of U.N. immunities, in a balancing test to protect fundamental rights of U.S. citizens.  If the National Security Administration is among those actors limiting U.N. immunity, as these news accounts suggest, it is very likely that the Administration (and DoJ) have made arguments to the Foreign Intelligence Surveillance Act (FISA) Court, explaining the balancing test that it asks the Court to use in limiting U.N. immunity in protection of U.S. interests, including fundamental U.S. citizen rights.

Decisions by the FISA Court are not available to Plaintiff since they are not public, but the Court can take notice and review the record to determine if, in fact, DoJ has told the Courts that the UN's immunities are qualified, not absolute, and to see what balancing test the Courts have used.

The fact that DoJ may have justified qualification of U.N. immunities on national security grounds, or that the limitation on immunity has been to secretly monitor U.N. officials (including the Secretary General) and activities of U.N. agencies rather than to initiate legal proceedings against the U.N., is highly relevant to this case.  Indeed, monitoring of officials and U.N. agencies is much more invasive than waiving immunity to a lawsuit where the U.N. can appear and argue its due process rights before the Courts. If the U.S. government can consider the surveillance of the U.N. as permissible and not subject to sanction, it can certainly recognize the conditionality of immunity from judicial process.  In applying a balancing test, national security protections are part of the same fundamental rights of U.S. citizens that Plaintiff is seeking to protect in this case and the

balancing test that Plaintiff requests has the same Constitutional basis as other, much more invasive limitations on U.N. immunities.

U.N. immunity is not absolute. DoJ knows it or should know it but has argued otherwise. It is now publicly acknowledged. The Court should acknowledge it and re-examine the principles on which U.N. immunity is based.

In relying on false statements by DoJ, the Court accepted some previous court holdings that U.N. immunity was "absolute" without applying either the balancing tests in previous decisions, the Constitutional strict scrutiny balancing test that Plaintiff asked the Court to apply, or the balancing of other "absolute" statements in the *General Convention* that Plaintiff also pleaded that the Court apply. Plaintiff has pointed the Court to other statements in the U.N. General Convention and in the U.N. Charter, that would condition U.N. immunity on its fulfillment of its intended purposes and on its commitments to "justice" and respect for U.S. laws. These provisions are equally "absolute".

In its decision, the Court has relied on holdings from several previous cases without applying some of the balancing tests offered or considering the specific facts and interests in those cases that would justify Plaintiff's pleadings to waive the immunity of the UN/UNDP for this case to go forward against said Defendant. In one of the cases in this Circuit, that DoJ presented to the Court as justifying "absolute" immunity, for example, *Atkinson v. Inter-American Development Bank*, 156 F. 3d. 1335, 332 U.S. App. DC 307, the Court presents just one potential balancing test (the Mendez Test) that Plaintiff believes would be sufficient to establish jurisdiction against the Defendant UN/UNDP (from *Mendez v. World Bank*, 717 F. 2d. 610), among several.

b) <u>DoJ knows or should know that Secretary of State Hillary Clinton directed employees of the Department of State, including Defendant Susan Rice, to participate in limiting the immunities of the U.N. and strengthening oversight to protect fundamental U.S. rights as a recognized duty, yet DoJ has told this Court that Defendant had no such duty to Plaintiff and no ability to exercise such powers such as those to protect the Plaintiff.  Notice of these duties offers a basis for the Court to re-open this case against Defendant Susan Rice.</u>

In its Motion to Dismiss (Defendant Susan E. Rice's Motion to Dismiss of May 3, 2013), DoJ told the Court that "Plaintiff's claim against Ambassador Rice for allegedly not interceding on his behalf with the UN in an employment dispute is specious on its face" (MTD, May 3, 2013, page 7).  DoJ told the Court that "there is no plausible allegation, however, that as a matter of law Ambassador Rice has an obligation" to protect Plaintiff's rights (page 12).

DoJ also claimed to this Court that any Constitutional argument for breaching any "absolute" immunity of the U.N. to protect U.S. interests or rights would also be without merit, noting that even "the suggestion that the Constitution requires the United States to waive the UN's immunity under the IOIA is also meritless" (pages 12-13).

DoJ told the Court once again in its *Reply in Support of Statement of Interest of the United States America*, June 10, 2013, that "Plaintiff also erroneously argues that, because the President may waive an international organization's immunity under the IOIA, Ambassador Rice has the power to waiver the UN's immunity." (page 8).

In its *Memorandum Opinion* of July 19, 2013, the Court has also relied on this belief in dismissing Plaintiff's claim against Defendant Susan Rice on a *Bivens* claim, noting that the Court was not convinced that the Defendant was "personally involved in conduct which violated the plaintiff's constitutional rights" (pages 19 – 20) and that the rights that Defendant violated do not fit into the category of those that "a reasonable

person would have known" (page 20), claiming that there were no facts that would "remotely support a finding that Rice violated any constitutional rights of Plaintiff" (page 20).

During the time of the facts of this case, while Susan Rice served as U.S. Ambassador to the U.N., she worked closely with Secretary of State Hillary Clinton. News stories like the one presented in the Annex to this motion cite a memorandum from Secretary of State Clinton that asked U.S. officials to "ferret out the ... personal information of UN Security Council members" including the UN Secretary General, in order to monitor their activities. In other words, the State Department created a duty on its "diplomats" including Defendant Susan Rice, to limit the immunities of the UN in furtherance of U.S. interests and protection of U.S citizens.

Plaintiff has argued to this Court that Defendant Susan Rice both recognized a duty and had the authority to limit the immunity of the U.N. in order to protect fundamental rights of U.S. citizens, including Plaintiff's 5th and 14th Amendment Rights. Secretary of State Clinton's widely circulated memorandum confirms Plaintiff's argument and supports his claim for *Bivens* and statutory relief in tort against Defendant Susan Rice/ Samantha Power.

Further, Plaintiff has argued to the Court that Defendant Susan Rice/ Samantha Power recognizes its powers of oversight over the U.N. and that Plaintiff has a right to seek a remedy that includes such oversight, including investigation of his claims. The news reports show that in exercising its oversight power over the U.N., the U.S. government has approved even direct monitoring of the daily activities of specific U.N. agencies. If the U.S. government recognizes the authority to secretly monitor activities as part of its

duties, it certainly also has the authority to act to protect Plaintiff's fundamental 5th and 14th Amendment Rights in its oversight functions of UNDP, including oversight of misconduct and violation of the U.N. Charter by U.N. officials, such as those Plaintiff has alleged.

    c)  <u>DoJ knows or should know that some of the difficulties Plaintiff has faced in trying to meet all of the administrative requirements for maintaining his lawsuit have been the result of actions by the U.S. State Department that have made it difficult for U.S. citizens to protect their constitutional rights, including the difficulty of serving Defendant Susan Rice in her personal capacity. In statements to this Court, DoJ has also tried to place the blame on Plaintiff. The Court's recognition of burdens placed on Plaintiff in initiating and maintaining his action offer a basis for the Court to re-open this case against Defendant Susan Rice.</u>

DoJ has told this Court that "Plaintiff has never served a Complaint on Ambassador Rice in her personal capacity" and that this should be grounds for dismissal of his *Bivens* claim (*Reply in Support of Defendant Susan E. Rice's Motion to Dismiss*, June 10, 2013, page 2).

DoJ again claims in *Defendant's Opposition to Plaintiff's Motion for Leave to File a Sur-Reply*, July 8, 2013, that "the complaint has not been served on her" (page 2). DoJ's allegation, in response to allegations by Plaintiff, is that citizens somehow have a responsibility to find procedures that government agencies hide from citizens, in frustration of citizen attempts to assert rights where officials have duties to protect those rights.

In its *Memorandum Opinion* of July 19, 2013, the Court has also relied on this belief in dismissing Plaintiff's claim against Defendant Susan Rice on a *Bivens* claim (page 18).

With this Motion, Plaintiff again references the Memorandum Amending Proof of

Service on Defendant Susan Rice in which Plaintiff offers e-mail communications from

process servers in the District of Columbia to document Plaintiff's intent and the

difficulties that they found the U.S. State Department created for any Plaintiff seeking to

serve a defendant employee in an individual capacity under a *Bivens* claim.

**III.    PUBLIC POLICY GOALS AND INTERESTS OF THE COURT ARE
          PART OF PLAINTIFF'S APPEAL FOR RELIEF TO THE COURT
          UNDER FRCP 60, AND PLAINTIFF APPEALS TO THE COURT TO RE-
          OPEN THE JUDGMENT IN THE HOPE OF PROMOTING SHARED
          INTERESTS OF PLAINTIFF AND OF THE UN AND OF THE U.S.
          AMBASSADOR TO THE U.N. AND THE U.S.**

While Plaintiff has noted, above and in previous pleadings, his good faith beliefs that

he had provided sufficient detail in his original Complaint in a way that he hoped would

save the Court and the parties time, and lead to rapid decision that would benefit all

parties, Plaintiff relies here on FRCP 60 (b) (1) and (6) to plead the goodwill of the Court

and all of the Parties in this dispute.

In his Pleadings to this Court, Plaintiff has often noted to the Court his "surprise" (an

element of FRCP 60 (b) (1)) by the actions and positions of Defendant Susan Rice, by

DoJ, and also by the UN/UNDP in not agreeing to "win-win" solutions that could be

quickly achieved and that would be in the interest of the UN system, of the U.S.

government, and of U.S. citizens.

Plaintiff has also made several appeals to public policy, which are really parts of the

underlying principles of the U.N., of U.S. oversight of the U.N., and for different legal

approaches to U.N. oversight that would strengthen and standardize such oversight where

it undermines the goals of all of the Parties in this dispute.  Plaintiff notes these again as part of the "other reason that justifies relief" under Rule 60 (b) (6).

In presenting his original 26 page Complaint with sworn statements, but not specific documents, and with an outline of Defendants responsibilities and causes of action but without painstaking detail and full elaboration of legal theories available to the Court (many of which are in specialized and emerging areas of law of oversight of international organizations and are under consideration by experts in law review articles like those that Plaintiff referenced in his *Motion to Query the Court on Issues Regarding Amendments to the Complaint and/or Service*. dated June 18, 2013), Plaintiff believed he was taking the approach that was in the best interests of all the Parties and the Court.

Though Plaintiff may be "naïve" in his idealism before the Court, Plaintiff also believed that the best way to convince the Parties to agree on solutions was to be assertive but not to directly "shame" public officials with every detail of their misdeeds. Plaintiff believed that merely pointing out the wrongs and referencing what the he believed the Defendants would certainly recognize as their harmful actions, would offer the best opportunity for resolution and avoidance of acrimony.  Plaintiff also believed such an approach would save the Court time and would be favored by the Court.

Now, Plaintiff presents the much more detailed Complaint that the Court has declared it requires, but has also sought to be selective and respectful in presenting evidence from a much larger record of what Plaintiff views as inaction, evasion, misrepresentation and misconduct by UN/UNDP and U.S. government officials whom Plaintiff approached over the course of three years in trying to resolve this matter, without success.

Similarly, Plaintiff believed that the Court would favor less detail from Plaintiff on legal theories and remedies and greater discretion to fashion remedies on its own. Plaintiff believed that pointing to the "just" result and "solutions" would be welcomed by the Court and would be most respectful.

Plaintiff was truly surprised by the response of DoJ and Defendant Susan Rice to seek to dismiss the case by denying responsibility and claims, rather than to work together on solutions as colleagues in a constructive way.

Plaintiff is still truly surprised that DoJ and Defendant Susan Rice would make arguments that seemingly limit rather than protect U.S. oversight authority over the U.N., that would offer U.N. officials a license for lawbreaking even where they violate the U.N. Charter, and that would make U.S. interests (and U.S. employees with the U.N.) even more vulnerable than before. Plaintiff is still surprised that DoJ would seem to want such a result, that it would go out of its way to protect misconduct by a few officials at the U.N., and that it would expend resources and Court time fighting a colleague rather than seeking a relatively quick and relatively inexpensive solution for which the U.N. could be accountable.

Plaintiff wishes he would not have been put in the position of alleging the misconduct of DoJ colleagues that he has presented in section II in this Motion, given that he would prefer to reach solutions with colleagues rather than to shame them or to note information that is now in the public domain only because the press has obtained it from leaked documents.

This case now transitions from Susan Rice to the new U.S. Ambassador to the U.N., Samantha Power. Ambassador Power will now be able to read the Amended Complaint

and Appendix where she can find a detailed and clear record of materials available to her office but also those sent personally to Defendant Susan Rice, with which Ambassador Power may have been unfamiliar. Ambassador Power is on record as having a special concern for the protection of U.N. employees as well as for strengthening U.S. interests at the U.N. She is an attorney and has the ability to work closely with DoJ attorneys in directing responses. Her confirmation hearings were also a reassertion of Congressional intent in achieving those outcomes.

Plaintiff believes that this Motion, the Court's re-opening of the judgment based on this Motion, and Ambassador Power's attention to this case can lead to the constructive and win-win solutions that Plaintiff has sought but that have not occurred in the transition period of Susan Rice's departure from her post as U.S. Ambassador to the U.N.

## CONCLUSION

Court time is precious and limited. Plaintiff understands why the Court has set a high standard for Plaintiff's complaint and Plaintiff believes he has met it in his Amended Complaint.

Plaintiff recognizes that presentations by government actors, like the Defendants and their lawyers, generally command respect and sometimes can act to change presumptions, subtly and subconsciously, against pro se Plaintiffs with seemingly small cases. Plaintiff has made every effort to keep the focus on the principles for government actions and to draw the Court's attention to inconsistencies that could undermine respect for government credibility and overall policy objectives, where they have arisen in this case.

There are important principles at stake in this seemingly small case, beneath what seem like routine case holdings and government assertions.

Plaintiff's Amended Complaint sets out the principles and evidence with the clarity and detail that the Court has requested and highlights in this Motion some of the areas where it is in the interests of the Parties and the Court to focus on the principles.

Plaintiff believes this case meets its requirements for jurisdiction and maintaining claims against both Defendants on several grounds and that the interests of justice should move the Court to re-open this case so that it can continue forward against both Defendants.

Plaintiff David Lempert, acting as his own attorney Pro Se, avers, on personal knowledge as to himself, and on information and belief as to all others, all of the above statements.

September 7, 2013                    Respectfully submitted,

                                     _____
                                     (electronic sign.)

                                     _____
                                     David H. Lempert, Pro Se
                                     California Bar Number  124761

## CERTIFICATE OF SERVICE

Plaintiff David Lempert, acting as Attorney Pro Se, certifies that a copy of this Motion to Amend the Complaint with all attachments has been mailed to attorney for the Defendant Susan Rice and the Office of the U.S. Ambassador to the United Nations, Mr. Nicholas Cartier, U.S. Department of Justice, P.O. Box 883, Washington, DC 20001 by an agent of Plaintiff at the same time that this document has been mailed to the Court.

## NSA may have spied on UN. Big deal, or business as usual?

Leaked documents show that NSA spying extended to the UN's International Atomic
Energy Agency, EU economic moves, and Security Council votes. For the US, the UN
has been an intelligence target for years, if not decades.

[From: Yahoo, Tuesday, August 27, 2013
On web at: http://news.yahoo.com/nsa-may-spied-un-big-deal-business-usual-133945632.html]

CHRISTIAN SCIENCE
MONITOR
*Peter Grier 6 hours ago*          By the Monitor's National Security Agency

The US National Security Agency has been spying on the United Nations, apparently.
And the UN is not too happy about it.

On Monday, the UN said it would ask the US about a report in the German magazine *Der
Spiegel* that the NSA had hacked into UN communications systems and was listening in
on diplomatic video conferences.

The *Der Spiegel* report, based on revelations from NSA leaker Edward Snowden, said the
NSA also eavesdropped on European Union diplomats in New York and was particularly
interested in intelligence on the UN's International Atomic Energy Agency (IAEA).

"We're aware of the reports and we intend to be in touch with the relevant authorities on
this," said UN spokesman Farhan Haq.

Mr. Haq added that "the inviolability of diplomatic missions, including the United
Nations and other international organizations, whose functions are protected by the
relevant international conventions like the Vienna Convention, has been well-established
in international law," according to the Associated Press.

If nothing else, this latest revelation may show the extent of US intelligence interests.
President Obama and other US officials have defended NSA programs as necessary to
protect the nation against further terrorist attacks. If the US spies on the UN and the EU,
it means the program likely also sucks up intelligence on international economic moves
and other issues unrelated to Al Qaeda.

That's a context in which the US has not put NSA spying, say critics.

"Until the government stops pretending this is exclusively about terrorism, and stops
pretending that terrorism is an existential threat or even the country's greatest one, it will
continue to lose credibility," writes surveillance expert Marcy Wheeler Monday on her
blog, "Empty Wheel."

Other experts said the revelations about US spying on the UN and on friendly European
diplomats should come as no surprise. All nations want to know as much as possible

23

about all others, in this view. What separates the US from other nations is capability, not intentions.

"This is not legitimate whistle blowing of government abuse, but exposing legitimate ops," tweeted freelance ░░░░░░ ░░░░░░ ░░░░░░ ░░░░░ on Monday.

Indeed, the US has viewed the UN as an intelligence target for years, if not decades.

In 2010, WikiLeaks published leaked documents that indicated that then-Secretary of State Hillary Rodham Clinton had asked diplomats to ferret out the credit-card numbers, frequent flier details, e-mail addresses, and other personal information of UN Security Council members.

The targets in question included UN Secretary-General Ban Ki-moon, "about whom the secretary of state requested information on 'management and decision-making style and his influence on the secretariat,' " according to ░░ ░░░░░░ ░░ ░░░ ░░░░ ░░ ░░░ ░░░░ ░░░░░.

Secretary of State Condoleezza Rice had made similar requests during the years of the Bush administration, according to the documents.

In 2004, the Washington Post reported that the US had eavesdropped on telephone calls between the then-head of the UN International Atomic Energy Agency, Mohamed ElBaradei, and Iranian diplomats. At the time, the US was concerned that Mr. ElBaradei was too soft on Iran, which the US has long believed is intent on developing nuclear weapons capability. But the spying revealed nothing of a nefarious nature.

"We've always assumed that this kind of thing goes on," IAEA spokesman ░░░░ ░░░░░░░ ░░░ ░░░ ░░░ in 2004. "We wish it were otherwise, but we know the reality."

Then in 2003, the Bush administration wiretapped UN Security Council members to discover their intentions prior to votes on resolutions dealing with Iraq, according to a contemporaneous report ░░ ░░░ ░░░░░░ ░░░░░░ ░░░░ ░░░ ░░░░░░░.

Of course, one reason the US might be interested in spying on the UN is because other nations have used it as a place to assign spies with diplomatic cover.

The Russian spy ring rolled up by the US in 2010 was managed by sleeper agents based in the New York offices of the Russian mission to the UN, for instance. Posing as low-level diplomats, these agents passed cash to, and took information from, Russian agents living without benefit of official cover.

"The Russian mission to the United Nations has been at the center of Moscow's sprawling intelligence-gathering operations in the United States for decades, providing Soviet and Russian operatives with ideal circumstances to infiltrate US diplomatic

missions, businesses, and circles of political elites," wrote Colum Lynch in Foreign Policy magazine in 2003.

Mr. Lynch quotes former US permanent representative to the UN Daniel Patrick Moynihan on this subject. When named to his post in 1975, Moynihan was summoned to the office of then-Vice President Nelson Rockefeller.

"There was something urgent he had to tell me," Moynihan wrote in the mid-1980s. "The first thing I must know about the United Nations, [Rockefeller] said, is that the Soviets would be listening to every telephone call I made from our mission from the ambassador's suite in the Waldorf Towers."

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

DAVID H. LEMPERT,  
c/o Walter Schwartz  
110 Crestview Place  
Ardsley, NY  10502  
            Plaintiff,  
v.  

SAMANTHA POWER,  
U.S. AMBASSADOR TO THE  
UNITED NATIONS,  
Washington, D.C.  
            Defendant  

UNITED NATIONS and  
UNITED NATIONS  
DEVELOPMENT PROGRAMME,  
Washington, D.C.  
            Defendant.  

Case: 1:12-cv-01518  
Assigned to: Kollar-Kotelly, Colleen  
Assign Date: 9/13/2012  
Description: Contract  

### [PROPOSED] ORDER

Upon consideration of Plaintiff's Motion to Re-Open Judgment, the Motion is Granted and the Court Clerk will file Plaintiff's Amended Complaint and its Appendix, dated August 7, 2013 (with attention to protection of the privacy of Defendant Susan Rice's email address) as well as Plaintiff's Memorandum Amending Proof of Service on Defendant Susan Rice, dated August 7, 2013, and will consider those amendments to its Memorandum Opinion that it deems proper.

**SO ORDERED.**

Date: _____, 2013

_____  
HON. COLLEEN KOLLAR-KOTELLY  
United States District Judge